**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| SCOTT K. GINSBURG,<br><br>                    Plaintiff,<br><br>        v.<br><br>GEORGETOWN UNIVERSITY,<br><br>                    Defendant. | Civil Action No. 3:13-CV-00952-L |

**DEFENDANT GEORGETOWN UNIVERSITY'S ANSWER AND COUNTERCLAIM**

Defendant Georgetown University ("Georgetown"), by and through the undersigned counsel, answers the Complaint filed against it by Scott K. Ginsburg and files a Counterclaim against Mr. Ginsburg as follows:

**FIRST DEFENSE**

Mr. Ginsburg's claims are barred insofar as they fail to state a claim for which relief may be granted.

**SECOND DEFENSE**

Pursuant to Federal Rule of Civil Procedure 8(b), Georgetown states the following in answer to the separately numbered averments in Mr. Ginsburg's Complaint.

**I.      Parties**

1.      Georgetown is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1.

2.      Georgetown denies that it is a District of Columbia sole proprietorship but admits the remaining allegations in paragraph 2.

1

## II. Jurisdiction and Venue

3.      Paragraph 3 states a legal conclusion regarding subject matter jurisdiction to which no response is required.  To the extent a response is deemed required, Georgetown admits that it is the citizen of the District of Columbia and that this Court has subject matter jurisdiction.

4.      Paragraph 4 states a legal conclusion regarding personal jurisdiction to which no response is required.  To the extent a response is deemed required, Georgetown admits that this Court has personal jurisdiction over it.  Further answering, Georgetown admits that it sent a representative to Texas in part to ask Mr. Ginsburg for donations; Georgetown admits that its officials developed an ongoing personal relationship with Mr. Ginsburg and met with him on more than one occasion in Texas and elsewhere regarding various matters, including to request donations; Georgetown admits that it sent Mr. Ginsburg communications in Texas and elsewhere.  Except as expressly stated, Georgetown denies the allegations in paragraph 4.

5.      Paragraph 5 contains a conclusion of law regarding personal jurisdiction to which no response is required.  To the extent a response is deemed required, Georgetown admits that it holds events from time to time in Texas.  Except as expressly stated, Georgetown denies the allegations in paragraph 5.

6.      Paragraph 6 contains conclusions of law to which no response is required.  To the extent a response is deemed required, Georgetown admits that venue is not improper in this District.

## III. Factual Background

7.      Georgetown admits that Mr. Ginsburg attended the Georgetown University Law Center as an evening student and graduated with a Juris Doctor degree in 1978.  Georgetown agrees that Mr. Ginsburg became a successful businessman.  Except as expressly stated,

Georgetown is without knowledge or information sufficient to form a belief as to the allegations in paragraph 7.

8.      Georgetown admits that Kevin Conry met with Mr. Ginsburg once in late 1999 and once in early 2000 in Dallas, Texas to discuss Georgetown's development plans for the Law Center, including a prospective sport and fitness center, and Mr. Ginsburg's possible involvement in those plans through a monetary gift to Georgetown.  Georgetown admits that Mr. Conry represented that Georgetown was interested in naming the prospective sport and fitness center after a benefactor who made a sufficiently large donation.  Except as expressly stated, Georgetown denies the allegations in paragraph 8.

9.      Georgetown admits the allegations in paragraph 9.

10.     Georgetown admits that Mr. Ginsburg and Georgetown entered into an agreement on March 30, 2000, but denies the remaining allegations in paragraph 10 because the agreement speaks for itself.

11.     Georgetown denies the allegations in paragraph 11 because the March 30, 2000 agreement speaks for itself.

12.     Georgetown denies the allegations in paragraph 12 because the March 30, 2000 agreement speaks for itself.

13.     Georgetown denies the allegations in paragraph 13 because the March 30, 2000 agreement speaks for itself.

14.     Georgetown admits that it issued a press release on September 1, 2000 announcing Mr. Ginsburg's gift but denies the remaining allegations in paragraph 14 because the press release speaks for itself.

15.     Georgetown denies the first sentence of paragraph 15 as stated.    Further answering, Georgetown admits that Mr. Conry visited Mr. Ginsburg in Texas on more than one occasion for, among other purposes, the solicitation of donations.  Georgetown admits the second and third sentences of paragraph 15.

16.     Georgetown admits the first seven sentences of paragraph 16 and denies the last sentence of paragraph 16 as stated.

17.     Georgetown denies the first sentence of paragraph 17 as stated and because the 2009 letter speaks for itself.

18.     Georgetown denies the first sentence of paragraph 18 as stated.  Georgetown denies the second and third sentences of paragraph 18.  Georgetown denies the fourth sentence of paragraph 18 as stated.

19.     Georgetown admits the first two sentences of paragraph 19 but denies the third sentence of paragraph 19.

20.     Regarding the first two sentences of paragraph 20, Georgetown admits that Dean Areen sent Mr. Ginsburg a letter dated May 2, 2002.  Georgetown denies the third sentence of paragraph 20 as stated.  Georgetown denies the remaining sentences of paragraph 20 because the letter speaks for itself.

21.     Georgetown denies the allegations in paragraph 21 as stated.

22.     Regarding the first sentence of paragraph 22, Georgetown denies that Mr. Ginsburg refused to amend the March 30, 2000 agreement or to relinquish naming rights but admits that it promoted Mr. Ginsburg's gift for fundraising purposes.  Georgetown denies the second sentence of paragraph 22 as stated.  Georgetown denies the third and fourth sentences of paragraph 22 because the document attached to the Complaint speaks for itself.

23.     Regarding the first sentence of paragraph 23, Georgetown denies that Mr. Ginsburg refused to amend the March 30, 2000 agreement, but admits that Georgetown officials traveled to Texas on more than one occasion to meet with Mr. Ginsburg for, among other purposes, seeking donations.  Georgetown denies the second sentence of paragraph 23, because the document attached to the Complaint speaks for itself.  Georgetown denies all allegations of the third sentence of paragraph 23, except it admits that Dean Areen and Mr. Conry traveled to Texas in July 2003.

24.     Georgetown denies the first sentence of paragraph 24 except that it admits that Mr. Ginsburg's commitment to Georgetown continued and grew.  Georgetown admits that Mr. Ginsburg pledged an additional $11,000,000 but denies all other allegations in the second and third sentences of paragraph 24.  Georgetown denies the fourth sentence of paragraph 24 as stated.  Further answering, Georgetown admits that Mr. Ginsburg was invited to join the Georgetown University Law Center's Board of Visitors, welcomed to University functions, invited on University trips, and embraced by the University, but denies the characterization of the reasons.  Georgetown denies the allegations of the remaining sentences of paragraph 24.

25.     Georgetown admits the first sentence of paragraph 25.  Georgetown denies the second and third sentence of paragraph 25, because the receipt speaks for itself.

26.     Georgetown denies the allegations in paragraph 26 as stated.  Further answering, Georgetown admits that the named individuals traveled to Texas to meet with Mr. Ginsburg for various purposes, including for the purpose of soliciting donations.  Georgetown denies that the visits occurred on a "regular basis" or that any Georgetown official ever assured Mr. Ginsburg that Georgetown would name the Sport and Fitness Center for him.

27.     Georgetown denies paragraph 27 as stated and because whatever document the paragraph quotes speaks for itself.

28.     Georgetown denies the allegations of the first sentence of paragraph 28. Regarding the second and third sentences of paragraph 28, Georgetown admits that Dean Aleinikoff sent Mr. Ginsburg a letter dated January 11, 2009 but denies the remaining allegations because the letter speaks for itself.  Georgetown admits that Mr. Ginsburg was sent a letter dated March 24, 2009 but denies the remainder of the fourth and fifth sentences of paragraph 28 because the letter speaks for itself.

29.     Georgetown admits that the Sport and Fitness Center has not been named for a donor.  Except as expressly stated, Georgetown denies the allegations in paragraph 29.

30.     Regarding the first sentence of paragraph 30, Georgetown denies that it assured Mr. Ginsburg that it would name the Sport and Fitness Center for him after April 2002, but admits that it did not name the Sport and Fitness Center for him.  Georgetown denies the second and third sentences of paragraph 30, because the e-mail from Mr. Ginsburg to Mr. Conry speaks for itself.  Georgetown denies the fourth sentence of paragraph 30.  Georgetown admits that Mr. Ginsburg met with President DeGioia in February 2013, but otherwise denies the fifth sentence of paragraph 30.  Georgetown admits that President DeGioia told Mr. Ginsburg he would look into the matter of Mr. Ginsburg's alleged naming rights, but otherwise denies the sixth sentence of paragraph 30.

31.     Georgetown admits that Mr. Ginsburg filed this action against Georgetown but denies the other allegations in the first sentence of paragraph 31 as stated.  Georgetown denies the second sentence of paragraph 31.  Georgetown admits that Mr. Ginsburg donated to

6

Georgetown at least $7.5 million, including his initial $5,000,000 pledge, but denies the other allegations of the third sentence of paragraph 31.

32.     Paragraph 32 states a legal conclusion regarding the statute of limitations to which no response is required.  To the extent a response is deemed required, Georgetown denies the allegations in paragraph 32.

## IV. Causes of Action

### First Cause of Action: Breach of Contract

33.     Regarding the allegations in paragraph 33, Georgetown re-alleges and incorporates herein by reference its answers to each of the allegations set forth in numbered paragraphs 1–32 of the Answer as if fully set forth herein.

34.     Paragraph 34 states a legal conclusion regarding the existence of a contract, to which no response is required.  To the extent a response is deemed required, Georgetown denies the allegations in paragraph 34 as stated.

35.     Georgetown denies the allegation in paragraph 35.

36.     Georgetown denies the allegation in paragraph 36.

37.     Georgetown admits that Mr. Ginsburg is seeking judicial relief but denies that Mr. Ginsburg suffered damages or is entitled to restitution or the recovery of attorney's fees and expenses incurred in the prosecution of this action.

### Second Cause of Action: Fraud/Fraudulent Inducement

38.     Regarding the allegations in paragraph 38, Georgetown re-alleges and incorporates herein by reference its answers to each of the allegations set forth in numbered paragraphs 1–37 of the Answer as if fully set forth herein.

39.     Georgetown denies the allegation in paragraph 39.

40.     Georgetown denies the allegations in paragraph 40.

41.     Georgetown denies the allegations in paragraph 41.

42.     Georgetown denies the allegation in paragraph 42.

43.     Georgetown admits that Mr. Ginsburg is seeking judicial relief but denies that Mr. Ginsburg suffered damages or is entitled to restitution or any other form of judicial relief.

### Third Cause of Action: Restitution

44.     Regarding the allegations in paragraph 44, Georgetown re-alleges and incorporates herein by reference its answers to each of the allegations set forth in numbered paragraphs 1–43 of the Answer as if fully set forth herein.

45.     Georgetown admits that Mr. Ginsburg has donated to Georgetown an amount of at least $7.5 million.  Except as expressly stated, Georgetown denies the allegations in paragraph 45.

46.     Georgetown admits that it solicited gifts from Mr. Ginsburg and was aware that Mr. Ginsburg made pledge payments to Georgetown.  Except as expressly stated, Georgetown denies the allegations in paragraph 46.

47.     Georgetown denies the allegation in paragraph 47.

48.     Georgetown denies the allegation in paragraph 48.

49.     Georgetown admits that Mr. Ginsburg seeks recover of at least $7.5 million, but denies that Georgetown was unjustly enriched or that Mr. Ginsburg is entitled to any recovery.

### Jury Demand

50.     Georgetown admits that Mr. Ginsburg has demanded a trial by jury in paragraph 50.

51.   Georgetown admits that Mr. Ginsburg is seeking various forms of judicial relief but denies that Mr. Ginsburg is entitled to the requested relief or any other relief.

\* \* \*

All allegations contained in the Complaint not otherwise specifically admitted, denied, qualified or otherwise responded to are denied.

### THIRD DEFENSE

Mr. Ginsburg's claims are barred by the applicable statutes of limitations.

### FOURTH DEFENSE

Mr. Ginsburg's claims are barred by the doctrine of laches.

### FIFTH DEFENSE

Mr. Ginsburg's claims are barred because Georgetown and Mr. Ginsburg modified the March 30, 2000 Agreement orally in 2002 and by entering into a second agreement in 2003 that superseded the March 30, 2000 Agreement and eliminated the naming condition.

### SIXTH DEFENSE

Mr. Ginsburg's claims are barred by an accord and satisfaction.

### SEVENTH DEFENSE

Mr. Ginsburg's claims are barred by the doctrines of waiver, estoppel, and/or unclean hands.

### EIGHTH DEFENSE

Mr. Ginsburg's claims are barred because he suffered no legally cognizable damages for any failure of the alleged naming condition.

### NINTH DEFENSE

Mr. Ginsburg's claims are barred because Georgetown's actions were legally justified and/or privileged.

## TENTH DEFENSE

Georgetown would be entitled to recoupment for any recovery to which Mr. Ginsburg might be entitled.

## ADDITIONAL DEFENSES

Georgetown reserves the right to raise any additional defenses as may be found to be merited during the course of discovery in, or trial of, this action, including without limitation any equitable defense.

## COUNTERCLAIM

For its Counterclaim against Mr. Scott K. Ginsburg, Georgetown alleges as follows:

## INTRODUCTION

1.     Under gift agreements executed in 2000 and 2003, Scott K. Ginsburg—a 1978 graduate of the Georgetown University Law Center ("Law Center"), a member of its Board of Visitors since 2000, and for many years an avid financial supporter of the University—promised to give Georgetown University $16 million.  The 2000 gift agreement pledged $5 million for the construction of a recreational facility on campus as part of the Georgetown University Law Center's Campus Completion Project.  The 2003 gift agreement pledged an additional $6 million for the Campus Completion Project and for the construction of a clock tower, and another $5 million for use at the discretion of the University President.

2.     Mr. Ginsburg still owes Georgetown approximately $9 million under the 2003 gift agreement, but has sued Georgetown in the above-captioned matter seeking return of all the money he has donated under both agreements, which he alleges totals approximately $7.5

million.  In response, Georgetown brings this Counterclaim to recover the amount outstanding under the 2003 gift agreement.

3.      Mr. Ginsburg claims that Georgetown failed to comply with a condition in the 2000 gift agreement requiring Georgetown to name the recreational facility the "Scott K. Ginsburg Sport and Fitness Center" once the facility was constructed.  Although Georgetown intended to comply with the condition, in spring 2002 Mr. Ginsburg was found liable for insider trading by a federal court jury in a civil case brought by the United States Securities and Exchange Commission ("SEC").  After learning of the verdict—and concerned about naming a new facility on the Law Center campus after someone found liable for insider trading— Georgetown offered to cancel Mr. Ginsburg's pledge and return his money.  Mr. Ginsburg refused.  He said he believed in the project and did not want his legal problems to slow the Law Center's progress, and agreed to waive the naming condition.  For its part, Georgetown agreed that if the SEC judgment finding him liable for insider trading were overturned, it would revisit the naming issue.  Final judgment in the SEC case ultimately was entered against Mr. Ginsburg in 2004.

4.      Accordingly, as of spring 2002, the understanding of the parties was that the building would not be named for Mr. Ginsburg.  For the next decade, Mr. Ginsburg and Georgetown continued to have a positive and productive relationship.  Most significantly, in 2003, Mr. Ginsburg made an additional $11 million pledge to the Law Center.  In addition, in October 2006, Mr. Ginsburg donated another $1 million to help the Law Center purchase real property adjacent to the Law Center campus.

5.      In September 2004, Georgetown celebrated the opening of the newly completed recreational facility, named the Sport and Fitness Center, and the completion of the clock tower.

Because the insider trading judgment against Mr. Ginsburg was final, Georgetown did not name the Sport and Fitness Center for him.  Mr. Ginsburg did not object, but instead participated as a speaker at the grand opening of the Sport and Fitness Center in September 2004.  At that event, Georgetown expressed deep appreciation for Mr. Ginsburg's gift and, in recognition of his generosity, unveiled a plaque together with a large portrait of Mr. Ginsburg that Georgetown placed in the interior entranceway to the Center, where they remain today.

6.     From at least 2004 until February 2013, Mr. Ginsburg never requested that the Law Center name the Fitness Center after him.  Nor did any Georgetown official ever say or make any representation to Mr. Ginsburg that the facility would be named for him.  At a February 2013 meeting, however, Mr. Ginsburg expressed concern that the building had not been named for him.

7.     The next month—almost thirteen years after entering into the 2000 agreement, eleven years after being told that the Law Center would not name the Sport and Fitness Center for him, ten years after he decided to pledge an additional $11 million to Georgetown, nine years after the SEC judgment against him became final, and nine years after he attended the formal grand opening of the "Sport and Fitness Center," which was not named for him—Mr. Ginsburg sued the University.

8.     Georgetown now brings this Counterclaim to recover the approximately $9 million that Mr. Ginsburg owes on the 2003 Pledge.

## II.     PARTIES

9.     Defendant and counter-plaintiff Georgetown University ("Georgetown") is a non-profit corporation incorporated and with its principal place of business in the District of Columbia.

10.     Plaintiff and counter-defendant Scott K. Ginsburg ("Mr. Ginsburg") is a citizen of Texas.  From 2006 to 2010, Mr. Ginsburg owned real property in the District of Columbia at 2903 P Street N.W., Washington D.C. 20007.

### III.     JURISDICTION

11.     Because the parties are citizens of different states and the amount in controversy exceeds $75,000, this Court has jurisdiction over the counterclaim alleged herein.

### IV.     VENUE

12.     Under 28 U.S.C. § 1391(b), venue is proper in this district because Mr. Ginsburg is the only-counter defendant and he resides in Texas.

### V.     FACTUAL ALLEGATIONS

13.     Mr. Ginsburg graduated from the Law Center in 1978 and became a highly successful entrepreneur and multi-millionaire.

14.     In late 1999 and early 2000, the Law Center sought to raise funds for what it termed the "Law Center Campus Completion Project."  The Law Center is situated in an urban area of the District of Columbia away from Georgetown's main campus.  In late 1999 and 2000, the Law Center consisted of a cluster of buildings but lacked the look and feel of a campus. Through the Campus Completion Project, the Law Center sought to create a campus by acquiring property around existing buildings and constructing new buildings.

15.     As part of the Campus Completion Project, Georgetown hoped to raise funds for the construction of a Sport and Fitness Center for use by the Law Center community. Georgetown sought to raise funds for the project from a number of sources, including Mr. Ginsburg, and intended to recognize the donor who provided a leadership gift by naming the building for that donor or the donor's designee.

16.     On March 30, 2000, Mr. Ginsburg pledged $5 million to Georgetown to be used in construction of the Sport and Fitness Center.  Although the general terms of what became the 2000 Pledge were discussed in Texas, Mr. Ginsburg's Washington, D.C. attorney drafted the agreement and negotiated the details with Georgetown officials in Washington, D.C.  The pledge agreement is attached hereto as Exhibit 1 (the "2000 Pledge Agreement").

17.     Under the 2000 Pledge Agreement, Mr. Ginsburg agreed to donate $5 million and Georgetown agreed to use the funds to construct the Sport and Fitness Center consistent with plans that had been shown to Mr. Ginsburg.  The pledge was conditioned on Georgetown's naming the new facility the "Scott K. Ginsburg Sport and Fitness Center" (the "Naming Condition").  The pledge was cancellable by Mr. Ginsburg in the event that Georgetown did not comply with the Naming Condition or its promise to construct the Sport and Fitness Center.

18.     The 2000 Pledge Agreement also required Georgetown to give to Mr. Ginsburg a lifetime membership and locker space in the Sport and Fitness Center.

19.     The terms of the 2000 Pledge Agreement made clear that the Board of Trustees was required to approve it, and the Board did approve the 2000 Pledge Agreement as required.

20.     Mr. Ginsburg believed in the importance of the Sport and Fitness Center. According to him, "One of the great lessons every student should learn before they become a lawyer is to channel aggressive behavior into activities such as athletic endeavors rather than in the legal system.  Putting an athletic center next to the Law Center, perhaps, will help these students understand this important distinction."  Ian A. Palko, *Law Center Alum Give $5M for Fitness: Planned Health and Recreation Center Will Bear Donor's Name*, The News Hoya (Sept. 12, 2000).

21.     Subsequent to execution of the 2000 Pledge Agreement, Mr. Ginsburg's relationship with the Law Center and the University deepened.  Mr. Ginsburg joined the Law Center's Board of Visitors in 2000 (he remains a member) and his daughter enrolled as an undergraduate student on the main campus in 2002.  Later, in 2006, she followed in her father's footsteps and enrolled at the Law Center.

22.     Georgetown intended to comply with the Naming Condition from the date on which the 2000 Pledge Agreement was executed until spring 2002, a period during which the Sport and Fitness Center was not yet fully financed, much less built.  In documents generated during that period (including, for example, every document Mr. Ginsburg attached to the Complaint from before April 2002) Georgetown referred to the building as the "Scott K. Ginsburg Sport and Fitness Center."

23.     On April 16, 2002, a jury in the United States District Court for the Southern District of Florida found Mr. Ginsburg civilly liable for insider trading violations.  The jury found that Mr. Ginsburg had shared material non-public information with his brother and father in violation of Rules 10-b and 14-e of the Securities and Exchange Act.  The verdict form is attached hereto as Exhibit 2.

24.     Later in April 2002, Judith Areen, who at that time was Dean of the Law Center, learned of the insider trading verdict from a newspaper article.

25.     Deeply troubled by the potentially negative publicity and the message it would send to students and the public that one of the nation's leading law schools had named a building after an individual found liable for insider trading, Dean Areen met with other officials at the University to discuss the 2000 Pledge and the Naming Condition.  They concluded that Georgetown should not name the building for Mr. Ginsburg under the circumstances, but instead

should offer to return the money Mr. Ginsburg had already paid on the 2000 Pledge and release him from any further financial obligation to Georgetown.

26.     Dean Areen telephoned Mr. Ginsburg to inform him that Georgetown would not name the Sport and Fitness Center for him in light of the SEC verdict, but would be willing to revisit the issue if the verdict were overturned.  Dean Areen told Mr. Ginsburg that Georgetown would return all the money he had already paid to the University (approximately $2 million) and release him from any future obligation under the 2000 Pledge Agreement.

27.     In response, Mr. Ginsburg informed Dean Areen that he would not accept the return of his money and would honor his pledge without Georgetown's fulfillment of the Naming Condition.  Mr. Ginsburg insisted that he wanted to go forward with the pledge and did not want his legal problems to stall the project.  Mr. Ginsburg also expressed confidence that the verdict against him would ultimately be overturned.  Dean Areen told Mr. Ginsburg that Georgetown would revisit the question of naming the facility for him only in the event that the verdict was overturned.  Mr. Ginsburg agreed.

28.     On April 25, 2002, the *Washington Post* reported that "Back in September 2000, the folks at the Georgetown University Law Center were crowing about 1978 alum Scott K. Ginsburg's $5 million gift to build the Scott K. Ginsburg sports and fitness facility.  But they've been much less talkative since April 16, when a federal jury found that Ginsburg . . . had engaged in illegal insider trading."  The story also quoted the Law Center's public relations department as stating:  "'Mr. Ginsburg wants the project to go forward and he has graciously requested to withdraw his name at this time,' she told us . . . 'he continues to be supportive of the project.'"  Mr. Ginsburg was quoted in this same news story.

29.     From spring 2002 forward, Georgetown made clear that it would not name the Sport and Fitness Center for Mr. Ginsburg as long as the verdict against him stood.

30.     Dean Areen and Georgetown relied on Mr. Ginsburg's agreement to waive the Naming Condition.  As Dean Areen wrote to Mr. Ginsburg in a letter dated May 2, 2002: "[y]our willingness to complete your pledge to the Law Center should make it possible for us to obtain Board approval of the full project on May 2002.  Without your steadfast loyalty, the project probably would not have been viable."  *See* Compl. Ex. E.

31.     Had Mr. Ginsburg accepted the return of his money and cancellation of the pledge, the project might have been delayed, but Georgetown would have had the opportunity to find another donor.

32.     On December 19, 2002, the District Court judge who presided over Mr. Ginsburg's insider trading case granted Mr. Ginsburg's motion for judgment notwithstanding the verdict ("JNOV").  The SEC appealed to the 11th Circuit.

33.     After the JNOV decision, Mr. Ginsburg called Georgetown's Vice President for Strategic Development and External Affairs, Kevin Conry, to ask whether he was still an accepted member of the Georgetown community and whether Georgetown would now agree to name the building after him.  Mr. Conry reaffirmed Mr. Ginsburg's place in the Georgetown community and told him the naming issue could be addressed at the conclusion of the legal proceedings.  After covering the same ground in a telephone conference with Dean Areen, Mr. Ginsburg scheduled a meeting with the President of the University.

34.     In spring 2003, just before the scheduled meeting, Mr. Ginsburg was involved in a serious automobile accident.  Mr. Ginsburg cancelled the meeting, but according to Mr.

Ginsburg, the accident left him feeling that he had received a second chance at life and motivated him to increase his charitable giving to Georgetown.

35.     And indeed, in spring 2003, Mr. Ginsburg called Dean Areen and asked her what was the amount of the largest single gift the Law School had ever received, telling her he wanted to exceed it.  He also said that he wanted to see the construction of a clock tower added back into the Campus Completion plan.  After Dean Areen told him that the largest gift the Law Center had ever received was $10 million, Mr. Ginsburg pledged $11 million to Georgetown (the "2003 Pledge").

36.     In a March 31, 2003 telephone conversation with Mr. Conry, Mr. Ginsburg stated that although he still wanted Georgetown to name the Sport and Fitness Center for him, he did not insist that Georgetown do so as a condition of the new pledge.

37.     On June 27, 2003, Mr. Ginsburg and Georgetown entered into the 2003 Pledge Agreement.  The 2003 Pledge Agreement is attached hereto as Exhibit 3.  The 2003 Pledge Agreement was for $11 million, and provided that $6 million of that amount was to be used for the Law Campus Completion Project (including up to $1 million for the construction of the clock tower) and the remaining $5 million was to be used at the discretion of the President of Georgetown University.  The gift was conditioned on Georgetown's procuring the design and construction of a clock tower at a prominent location on the Law Center campus as part of the Law Campus Completion Project.

38.     The 2003 Pledge Agreement modified the 2000 Agreement.  The 2003 Pledge Agreement reaffirmed the 2000 Pledge, stating that "[Mr. Ginsburg] agreed to provide the sum of Five Million Dollars ($5,000,000) for the purpose of helping to construct a Sport and Fitness Building on the Georgetown University Law Center campus." *See* Exhibit 3 at Introduction.  The

2003 Pledge Agreement then integrated the remaining balance on the 2000 Pledge ($3 million) into one consolidated payment schedule with the 2003 Pledge. *See id.* at ¶ 1.  Georgetown relied on Mr. Ginsburg's 2003 Pledge Agreement by constructing the clock tower and taking other steps in furtherance of the Campus Completion project.

39.     On March 19, 2004, the Eleventh Circuit Court of Appeals reversed the District Court's grant of JNOV to Mr. Ginsburg and ordered that the jury verdict finding him liable for insider trading be reinstated.  On June 4, 2004, the District Court entered final judgment against Mr. Ginsburg, permanently enjoining him from future violations of the Securities and Exchange Act and ordering him to pay a $1 million civil penalty.  The order is attached hereto at Exhibit 4. Mr. Ginsburg appealed no further.

40.     Just over three months later, on September 10, 2004, the Law Center dedicated the newly-completed Sport and Fitness Center.  Because the SEC judgment against him had been finalized—and consistent with his agreement with Dean Areen—the Law Center did not name the building for Mr. Ginsburg.  However, the Law Center publicly recognized Mr. Ginsburg's gift, including by displaying a large portrait of him in the lobby of the Sport and Fitness Center above a plaque stating that his gift had made the building possible.

41.     Mr. Ginsburg attended the Sport and Fitness Center dedication ceremony and helped cut the ribbon.  The Law Center hosted a "Recognition Ceremony" honoring Scott K. Ginsburg, L '78, "[w]ith deepest appreciation to Scott K. Ginsburg, L'78 a loyal alumnus and valued friend, whose profound generosity of spirit and extraordinary commitment to the Law Center community made possible this Sport and Fitness Center."  Mr. Ginsburg was introduced by Law Center Dean Aleinikoff and made remarks to the assembled guests.  The materials published in connection with the event provided that "Scott made an extraordinary leadership

level gift to the Law Center for the construction of the Sport and Fitness Center and the clock tower on the Law Center campus."  *See* Exhibit 5.

42.     The building, however, did not bear Mr. Ginsburg's name.  Instead, in lettering over the main entrance, the Law Center named the building the "Sport and Fitness Center."

43.     Mr. Ginsburg did not complain about this.  To the contrary, he proceeded to make payments under the 2003 Pledge Agreement and, in general, to continue his amicable relationship with Georgetown.   On October 5, 2005, Mr. Ginsburg sent Georgetown a handwritten note transmitting a $1 million check, explaining that "[my] commitment to GU is a source of great pride and happiness.  And here is another installment of my continuing pledge to the University, the Law School and to its leadership."   In October 2006, Mr. Ginsburg pledged and completed payment on a new $1,029,074.77 gift for the acquisition of a townhouse property for the Campus Completion Project. The parties continued their mutually productive and satisfying business relationship through 2013, and during that period Mr. Ginsburg never again demanded that Georgetown name the Sport and Fitness Center for him.

44.     At a February 2013 meeting between Mr. Ginsburg and Georgetown's President, Mr. Ginsburg abruptly changed course and, for the first time since at least 2004, expressed concern that the Sport and Fitness Center had not been named for him.  Mr. Ginsburg's failure to raise the subject for nine years was not for lack of opportunity.  For much of that time, Mr. Ginsburg had been meeting and communicating frequently with the Dean of the Law School, Alex Aleinikoff, both as a friend and as a member of the Law Center Board of Visitors, a position that Ginsburg holds to this day.  But Mr. Ginsburg never expressed to Dean Aleinikoff any concern that the Sport and Fitness Center did not bear his name.

45.    Mr. Ginsburg did, however, fall short on pledge payments, including among others the pledge payment due before December 30, 2009.  Mr. Ginsburg owes approximately $9 million in payments under the 2003 Pledge Agreement.

46.    For its part, Georgetown completed the clock tower on the Law Center's campus in accordance with the 2003 Pledge Agreement and used all funds consistent with the 2003 Pledge Agreement.  Georgetown has incurred expenses that it otherwise would not have incurred if it had received Mr. Ginsburg's 2003 pledge in full.

47.    Mr. Ginsburg has sued Georgetown seeking to recover all the money he has paid to Georgetown under the 2003 Pledge Agreement.

## VI.    CAUSES OF ACTION

### COUNT I: BREACH OF CONTRACT

48.    Georgetown hereby incorporates by reference paragraphs 1–47 of this Counterclaim as if fully set forth herein.

49.    The 2003 Pledge Agreement is an enforceable written contract.  Under the 2003 Pledge Agreement, Mr. Ginsburg agreed to donate $14 million dollars to Georgetown. Georgetown agreed to construct on its Law Center campus a clock tower that Mr. Ginsburg wanted added back into the Campus Completion Project and otherwise to use the funds given for specified purposes or at the direction of specified individuals.

50.    Georgetown constructed the clock tower and has materially complied with all other terms and conditions of the 2003 Pledge Agreement.

51.    Mr. Ginsburg, however, has failed to complete his pledge payments and owes a balance of approximately $9 million.

52.     As a result of Mr. Ginsburg's failure to honor the 2003 Pledge Agreement, Georgetown suffered damages in the amount of the outstanding balance under the 2003 Pledge Agreement to be proven at trial, approximately $9 million, plus interest.  In the event Texas law is deemed to apply to the 2003 Pledge Agreement, Georgetown also seeks recovery of its reasonable and necessary attorneys' fees and expenses occurred in the prosecution of this action, as permitted by the Texas Civil Practice and Remedies Code.

## COUNT II: PROMISSORY ESTOPPEL

53.     Georgetown hereby incorporates by reference paragraphs 1–52 of this Counterclaim as if fully set forth herein.

54.     Mr. Ginsburg promised to pay Georgetown $14 million dollars in the 2003 Pledge Agreement but has failed to pay approximately $9 million of that amount.

55.     Mr. Ginsburg not only could foresee that Georgetown would rely on his promise but expected and encouraged Georgetown to do so.

56.     Georgetown relied on the promise to its detriment.

57.     Injustice can be avoided only by the enforcement of Mr. Ginsburg's promise.

## VII.    JURY TRIAL

58.     Georgetown demands a trial by jury on all issues.

## VIII.   RELIEF REQUESTED

59.     Georgetown respectfully requests the following relief:

a.   Expectation and reliance damages;

b.   In the event Texas Law governs this breach of contract action, the reasonable and necessary attorneys' fees and expenses incurred through the trial of this

action and through any appeal, including but limited to expert witness fees and expenses;

c.   The costs of prosecuting this action;

d.   Such other appropriate relief to which Georgetown may be entitled.


Dated: April 9, 2013                                      Respectfully submitted,


                                                           _____ */s/ Bruce D. Oakley* _____


William D. Nussbaum                                        Bruce  D. Oakley
D.C. Bar No. 941815                                        State Bar No. 15156900
Joel D. Buckman                                            HOGAN LOVELLS US LLP
D.C. Bar No. 1003868                                       700 Louisiana Street
HOGAN LOVELLS US LLP                                       Suite 4300
Columbia Square                                            Houston, TX 77002
555 Thirteenth Street, NW                                  Tel: (713) 632-1400
Washington, DC 20004                                       Fax: (713) 632-1401
Tel: (202) 637-5600                                        bruce.oakley@hoganlovells.com
Fax: (202) 637-5910
william.nussbaum@hoganlovells.com                          *Counsel for Defendant Georgetown*
joel.buckman@hoganlovells.com                              *University*

*Of counsel*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically on April 9th, 2013, in compliance with the Court's Standing Order Designating Case for Enrollment in the Electronic Case Files System, and has been served on all counsel by electronic service.


_____ */s/ Bruce D. Oakley* _____
Bruce D. Oakley