IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SCOTT K. GINSBURG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-cv-00952-L |
| | § | |
| GEORGETOWN UNIVERSITY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

---

**RESPONSE IN OPPOSITION TO GEORGETOWN
UNIVERSITY'S MOTION TO TRANSFER VENUE**

---

John T. Cox III
Texas Bar No. 24003722
tcox@lynnllp.com
David S. Coale
Texas Bar No. 00787255
dcoale@lynnllp.com
Christopher J. Schwegmann
Texas Bar No. 24051315
cschwegmann@lynnllp.com
Nicholas J. Chapleau
Texas Bar No. 24069494
nchapleau@lynnllp.com
**LYNN, TILLOTSON, PINKER & COX, L.L.P.**
2100 Ross Avenue
Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3000
Facsimile: (214) 981-3839

ATTORNEYS FOR PLAINTIFF SCOTT K. GINSBURG

# TABLE OF CONTENTS

I. Introduction ...................................................................................................................... 1

II. Factual Background............................................................................................................ 1

III. Argument and Authorities.................................................................................................. 3

    A.  Defendant has a Significant Burden to Overcome Plaintiff's Choice of Venue..................3

    B.  The "Public Factors" Overwhelmingly Favor Venue in the Northern District of Texas.....4

        1.  The Administrative Difficulties Flowing from Court Congestion.     5

        2.  Dallas Has a Greater Local Interest in Decided This Dispute at Home.     6

    C.  The "Private Factors" Favor Retaining the Plaintiff's Choice of Venue in the Northern District of Texas. ...................................................................................................10

        1.  The Parties' Ease of Access to Sources of Proof Is Neutral.     10

        2.  Georgetown Fails to State Whether Compulsory Process for Non-Party Witnesses Is Necessary.     11

        3.  The Cost of Attendance for Willing Witnesses.     11

        4.  All Other Practical Problems.     15

    D.  Georgetown Has Failed to Meet Its Significant Burden as the Balance of Factors Favors Retaining Venue in the Northern District of Texas. .................................................16

IV. Conclusion ...................................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Acumen Enterprises, Inc. v. Morgan*, 3:11-CV-619-L, 2011 WL 5822252 (N.D. Tex. Nov. 15, 2011) ................................................................................................................................ 10

*AllChem Performance Products, Inc. v. Oreq Corp.*, 3:11-CV-3577-D, 2013 WL 180460 (N.D. Tex. Jan. 17, 2013) .......................................................................................................... 11

*Busch v. Robertson*, 3:05-CV-2043-L, 2006 WL 1222031 (N.D. Tex. May 5, 2006) ............. 6, 13

*Canine Caviar Pet Foods, Inc. v. Pied Piper Pet & Wildlife, Inc.*, CIV.A. 3:09-CV00677L, 2009 WL 2568206 (N.D. Tex. Aug. 19, 2009) ....................................................... 7, 8, 9, 11

*Caterpillar, Inc. v. ESCO Corp.*, 12-CV-1017, 2012 WL 6618602 (C.D. Ill. Dec. 18, 2012) ..... 12

*CIT Group/Commercial Services, Inc. v. Romansa Apparel, Inc.*, 3:02-CV-1954-P, 2003 WL 169208 (N.D. Tex. Jan. 21, 2003) ................................................................................... 13

*Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F. Supp. 1392 (S.D.Tex.1992) .......... 15

*Dagel v. Resident News, LLC*, 3:11-CV-00663-L, 2011 WL 3518281 (N.D. Tex. Aug. 10, 2011) ........................................................................................................................ 4, 12, 13

*El Chico Restaurants of Texas, Inc. v. Carroll*, 3:09-CV-2294-L, 2010 WL 2652286 (N.D. Tex. June 29, 2010) ............................................................................................................ 7, 8

*Frost v. ReliOn, Inc.*, 3:06-CV-0822-G, 2007 WL 670550 (N.D. Tex. Mar. 2, 2007) ................. 12

*Getz v. Boeing Co.*, 547 F. Supp. 2d 1080 (N.D. Cal. 2008) ........................................................ 12

*In re Genentech, Inc.,* 566 F.3d 1338 (Fed. Cir. 2009) ............................................................ 5, 14

*In re Volkswagen AG,* 371 F.3d 201 (5th Cir. 2004) ...................................................................... 4

*In re Volkswagen of America, Inc.*, 545 F.3d 304 n.10 (5th Cir. 2008) ......................................... 4

*JPMorgan Chase Bank, N.A. v. Dixon*, 3:11-CV-00157, 2011 WL 2534601 (N.D. Tex. June 24, 2011) ................................................................................................................................ 10

*Kyros v. N. Am. Bioproducts Corp.*, 4:09CV3041, 2009 WL 1175167 (D. Neb. Apr. 28, 2009) 13

*Marshall v. Fulton*, CIV.A. 3:08-CV1921-L, 2009 WL 2136408 (N.D. Tex. July 17, 2009) ....... 7

*Metromedia Steakhouses Co., L.P. v. BMJ Foods Puerto Rico, Inc.*, CIV.A.3:07-CV-2042-D, 2008 WL 794533 (N.D. Tex. Mar. 26, 2008) ...................................................................... 7

**Response in Opposition to Georgetown**
**University's Motion to Transfer Venue**
02532-301 | 4835-2360-4243

**Page ii**

*Nelson v. R. Greenspan & Co., Inc.*, 613 F. Supp. 342 (E.D. Mo. 1985) ...................................... 13

*Nobel Ins. Co. v. Acme Truck Line, Inc.*, CIV. A. 3:99CV2950G, 2000 WL 298908 (N.D. Tex. Mar. 21, 2000) ............................................................................................................................... 15

*Pub. Util. Serv. Corp. v. Leggett & Platt, Inc.*, CIVA 08-1860, 2008 WL 4610241 (E.D. Pa. Oct. 16, 2008) ................................................................................................................................... 12

*Quicksilver, Inc. v. Acad. Corp.*, CIV.A. 3:98-CV-1772R, 1998 WL 874929 (N.D. Tex. Dec. 3, 1998) .............................................................................................................................. 12, 13

*Relational, LLC v. TDMK, LLC*, 07 C 4449, 2008 WL 2704757 (N.D. Ill. July 7, 2008) ........... 12

*Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503 (1981) ..................................................................... 5

*S. Imaging, LLC v. Terry*, CIV. A. 07-3741, 2007 WL 3237515 (E.D. La. Oct. 31, 2007) ........... 7

*Sabre Technologies, L.P. v. TSM Exhibits, Inc.*, 3:09-CV-0392, 2010 WL 3855316 (N.D. Tex. Sept. 29, 2010) ..................................................................................................................... 6, 8

*Seeberger Enterprises, Inc. v. Mike Thompson Recreational Vehicles, Inc.*, 502 F. Supp. 2d 531 (W.D. Tex. 2007) ................................................................................................................... 11

*Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22 (1988) ................................................................. 14

*Stratmark, Ltd. v. Cross Mediaworks, Inc.*, 3:10-CV-0780, 2010 WL 5106442 (N.D. Tex. Dec. 14, 2010) ............................................................................................................................... 16

*USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, No. 3:10-CV-2466, 2011 WL 1103372 (N.D. Tex. Mar. 25, 2011) ................................................................... 5, 11, 13

*Van Dusen v. Barrack,* 376 U.S. 612 (1964) ............................................................................... 14

## STATUTES

28 U.S.C. § 1404 ............................................................................................................................. 4

## OTHER AUTHORITIES

Wright, Charles Alan, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* (3d ed. 1998) .......................................................................................................................... 11

**Response in Opposition to Georgetown**
**University's Motion to Transfer Venue**
02532-301 | 4835-2360-4243

**Page iii**

# I. <u>INTRODUCTION</u>

This case involves claims for fraud and breach of contract because Georgetown breached and lied about its agreement to name a building built with Scott K. Ginsburg's money in his honor. This Motion requires the Court to decide whether Georgetown can overcome the significant burden to disturb a Texas resident's choice of forum. Georgetown cannot overcome this burden. First, Georgetown's repeated fraudulent misrepresentations occurred in and were aimed at Dallas, Texas. Second, the contract at issue originated and was executed in Dallas. Third, Georgetown's conduct harmed a Dallas resident. Fourth, the case involves only a few witnesses, each of whom often travels to Dallas, and a limited number of electronic documents. Fifth, the Northern District of Texas is one of the most efficient courts in the country and far more efficient than the District of Columbia. Because there is no compelling reason, much less good cause, to disturb Mr. Ginsburg's choice of venue the Court should deny Georgetown's motion to transfer venue.

# II. <u>FACTUAL BACKGROUND</u>

Scott Ginsburg is a Georgetown University Law Center (the "Law Center") alumnus and successful Dallas businessman. Ginsburg's alma mater sought to capitalize on his success in late 1999 and early 2000 when Kevin Conry, the Vice President of Strategic Development and External Affairs and Associate Dean of External Affairs of the Law Center, came to Dallas to foster a relationship with Ginsburg and solicit his donations. (App. at 001-002 (Aff. ¶¶ 2-3).) Conry met with Ginsburg in Texas several times to discuss Georgetown's development plans for the Law Center, including a prospective sport and fitness center, and Ginsburg's possible involvement in those plans through a monetary gift to the university. (App. at 002 (Aff. ¶ 3).)

**Response in Opposition to Georgetown**                                                                    **Page 1**
**University's Motion to Transfer Venue**
02532-301 | 4835-2360-4243

In these Dallas meetings, Ginsburg and Conry first discussed and negotiated what would later become an Agreement (the "Agreement") by which Ginsburg pledged to donate $5,000,000 to Georgetown for the construction of a fitness center at the Law Center in return for the naming rights to the building. (*See id.*) After the parties decided on these basic substantive terms in Dallas, a contract between Ginsburg and Georgetown was reduced to writing. (*See id.*) On March 30, 2000, in Dallas, Ginsburg executed the document.

On May 2, 2002, then-Law Center Dean Judith Areen sent a letter to Ginsburg in Dallas requesting that he sign an amendment to the 2000 Agreement and relinquish naming rights to the fitness center. (App. at 002 (Aff. ¶ 4); App. at 005-010 (Ex. A-1).) Ginsburg refused to sign the proposed amendment, and it was never executed. (*See id.*) Georgetown moved forward with the opening of the fitness center in 2004 without Ginsburg's name but promised to later add his name to the building as agreed. (*See id.*)

Georgetown employees continued to travel to Dallas to solicit further donations from Ginsburg. (App. at 002 (Aff. ¶¶ 4-5); App. at 011-013 (Ex. A-2).) Over the next ten years, Conry visited Ginsburg repeatedly in Dallas to solicit and encourage further donations. Conry was, at times, accompanied by other Georgetown representatives including former Dean, Judith Areen; the President of Georgetown University, John DeGioia; and former Dean, Alex Aleinikoff, who succeeded Areen. (App. at 002-003 (Aff. ¶¶ 5, 7); App. at 011-013 (Ex. A-2).) As part of this fundraising effort, President DeGioia visited Ginsburg in his Dallas home in December 2001 and later met with Ginsburg again at Brookhollow Golf Club. (App. at 002-003 (Aff. ¶ 6); App. at 014 (Ex. A-3).) Former Dean Areen also visited Ginsburg in Dallas on at least two occasions. (*See id.*) Former Dean Aleinikoff visited Ginsburg in Dallas as well, including a visit at

Ginsburg's home in 2007 after Ginsburg's son was born, bringing Georgetown baby clothes as a gift. (App. at 003 (Aff. ¶ 8); App. at 015 (Ex. A-4).)

In several of these Dallas meetings, these Georgetown employees expressly represented to Ginsburg that Georgetown would ultimately honor its Agreement and grant Ginsburg full naming rights to the Scott K. Ginsburg Sport and Fitness Center. (App. at 003-004 (Aff. ¶¶ 10, 11); App. at 011-013 (Ex. A-2).) The Georgetown representatives explained that the delay in adding Ginsburg's name to the building was due to concerns about adverse press arising from Ginsburg's civil litigation with the Securities and Exchange Commission, but that after the passage of adequate time the building would ultimately be named the "Scott K. Ginsburg Sport and Fitness Center." (App. at 003 (Aff. ¶ 10).) Specifically, Dean Areen and Conry came to Dallas and made such assurances to Ginsburg in person in July 2003. (App. at 003-004 (Aff. ¶ 11); App. at 011-013 (Ex. A-2); App. at 016 (Ex. A-5).) These reassurances continued into May 2010, when Conry came to Dallas to reassure Mr. Ginsburg. (App. at 003-004 (Aff. ¶¶ 9-11); App. at 016 (Ex. A-5).) Since 1999, Georgetown officials met with Ginsburg in Dallas often, each time related to fundraising, reassurances of the intent to name the center, and other issues that form the basis of this lawsuit. (App. at 003-004 (Aff. ¶¶ 10, 12).) Though Ginsburg also traveled to the District of Columbia during this time, the vast majority of this travel was to visit his daughter, a Georgetown student at the time, or to attend to his other responsibilities to Georgetown. (App. at 004 (Aff. ¶ 13).)

## III. ARGUMENT AND AUTHORITIES

### A. Defendant has a Significant Burden to Overcome Plaintiff's Choice of Venue.

The plaintiff's choice of venue "places a *significant burden* on the movant to show good

Response in Opposition to Georgetown
University's Motion to Transfer Venue
02532-301 | 4835-2360-4243

Page 3

cause for the transfer" under 28 U.S.C. § 1404(a). *In re Volkswagen of America, Inc.*, 545 F.3d

304, 314 n.10 (5th Cir. 2008) ("*Volkswagen II*") (emphasis added). To determine whether a

plaintiff's choice of forum should be disturbed, district courts look to a "number of private and

public interest factors, none of which is given dispositive weight":

> The private concerns include: (1) the relative ease of access to sources of proof;
> (2) the availability of compulsory process to secure the attendance of witnesses;
> (3) the cost of attendance for willing witnesses; and (4) all other practical
> problems that make trial of a case easy, expeditious and inexpensive. The public
> concerns include: (1) the administrative difficulties flowing from court
> congestion; (2) the local interest in having localized interests decided at home;
> (3) the familiarity of the forum with the law that will govern the case; and (4) the
> avoidance of unnecessary problems of conflict of laws of the application of
> foreign law.

*Dagel v. Resident News, LLC*, 3:11-CV-00663-L, 2011 WL 3518281, at *4 (N.D. Tex. Aug. 10,

2011) (Lindsay, J.) (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)

("*Volkswagen I*")). The plaintiff's choice of forum "should not be disturbed unless the balance of

factors *strongly* favors the moving party" and the moving party "demonstrates that the transferee

venue is *clearly* more convenient." *Id.* (citing *Volkswagen II*, 545 F.3d at 315) (emphasis added).

Georgetown has failed to meet its significant burden to show good cause for transfer because the

balance of the factors favors the Northern District of Texas.

**B.    The "Public Factors" Overwhelmingly Favor Venue in the Northern District of Texas.[1]**

This brief first addresses the § 1404(a) public factors because they strongly favor the

plaintiff's chosen venue in the Northern District of Texas and are dispositive of whether

---

[1] Ginsburg agrees that the third and fourth public factors, the familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws of the application of foreign law, are neutral.

**Response in Opposition to Georgetown**                                              **Page 4**
**University's Motion to Transfer Venue**
02532-301 | 4835-2360-4243

Georgetown can meet its substantial burden of demonstrating that the District of Columbia venue is clearly more convenient. Because Georgetown cannot meet its burden, the Motion should denied.

   *1. The Administrative Difficulties Flowing from Court Congestion.*

  Georgetown presents evidence about the absolute numbers of cases in the two districts but fails to focus on the relevant issue of congestion, which actually favors venue in the Northern District of Texas. When considering this factor, "the real issue is . . . whether a trial may be speedier in another court . . . " *USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, No. 3:10-CV-2466, 2011 WL 1103372, at *5 (N.D. Tex. Mar. 25, 2011) (Fitzwater, C.J.) (quoting *In re Genentech, Inc.,* 566 F.3d 1338, 1346 (Fed. Cir. 2009)) (determining congestion by time for disposition, not caseload); *see also Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 520 n.23 & 24 (1981) (examining court congestion by looking to average time from filing until trial).

  Here, Georgetown's own evidence shows that the median time from filing to disposition and/or trial is significantly shorter in the Northern District of Texas than the District of Columbia. The median time for disposition of all civil cases in the Northern District of Texas for the 12–month period ending September 30, 2012 was 7.1 months; in the District of Columbia, the median time was 9.2 months.[2] The median time from filing to trial of all civil cases in the Northern District of Texas for the 12–month period ending September 30, 2012 was 19.9 months; in the District of Columbia, the median time was 31.2 months.

---

[2] *See* Federal Court Management Statistics, http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-september-2012.aspx (last visited Apr. 29, 2013).

**Response in Opposition to Georgetown**             **Page 5**
**University's Motion to Transfer Venue**
02532-301 | 4835-2360-4243

| | Median Time From Filing to Trial (Civil Only) | National Ranking | Median Time From Filing to Disposition | National Ranking | Trials Completed | National Ranking | Cases Over 3 Yrs. | National Ranking |
|---|---|---|---|---|---|---|---|---|
| N.D. TX | 19.9 | 18/94 | 7.1 | 20/94 | 22 | 37/94 | 81 | 5/94 |
| D.C. | 31.2 | 54/94 | 9.2 | 52/94 | 9 | 91/94 | 448 | 83/94 |
| More Efficient | N.D. TX | N.D. TX | N.D. TX | N.D. TX | N.D. TX | N.D. TX | N.D. TX | N.D. TX |

The Northern District of Texas achieves these results with almost three times as many cases, and 20% fewer judges:

| | Judgeships | Filings | Actions Per Judge | National Ranking |
|---|---|---|---|---|
| N.D. TX | 12 | 8,181 | 628 | 13/94 |
| D.C. | 15 | 2,827 | 188 | 90/94 |

As the Court observed in a prior case: "This court, however, can state unequivocally that no congestion will occur on this court's docket if the case remained in Dallas." *Sabre Technologies, L.P. v. TSM Exhibits, Inc.*, 3:09-CV-0392, 2010 WL 3855316, at *5 (N.D. Tex. Sept. 29, 2010) (Lindsay, J.). Even with a busy docket, this Court is one of the most efficient in the country, and its record strongly favors venue in this District.

> 2.    *Dallas Has a Greater Local Interest in Decided This Dispute at Home.*

The Northern District of Texas has a greater local interest than the District of Columbia in deciding this dispute. "As this court has recognized, the State of Texas has an interest in protecting its citizens from the 'tortious conduct of nonresidents aimed at its own residents.'" *Busch v. Robertson*, 3:05-CV-2043-L, 2006 WL 1222031, at *6 (N.D. Tex. May 5, 2006)

(Lindsay, J.); *see also Marshall v. Fulton*, CIV.A. 3:08-CV1921-L, 2009 WL 2136408, at *8 (N.D. Tex. July 17, 2009) (Lindsay, J.) ("The second public factor, the local interest, weighs in favor of this forum because Defendant aimed tortious activity at this forum."); *Canine Caviar Pet Foods, Inc. v. Pied Piper Pet & Wildlife, Inc.*, CIV.A. 3:09-CV00677L, 2009 WL 2568206, at *5 (N.D. Tex. Aug. 19, 2009) (Lindsay, J.) (holding that this factor weighs in favor of location "where all or a substantial amount of the alleged acts and omissions took place"); *S. Imaging, LLC v. Terry*, CIV. A. 07-3741, 2007 WL 3237515, at *4 (E.D. La. Oct. 31, 2007) (recognizing a local interest in protecting "citizens from non-residents who cause financial damage through breach of contract with its citizens").

Because the acts giving rise to Ginsburg's claims occurred in Texas, "[t]his factor generally favors the venue where the acts giving rise to the lawsuit occurred." *Metromedia Steakhouses Co., L.P. v. BMJ Foods Puerto Rico, Inc.*, CIV.A.3:07-CV-2042-D, 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008) (Fitzwater, C.J.); *see also El Chico Restaurants of Texas, Inc. v. Carroll*, 3:09-CV-2294-L, 2010 WL 2652286, at *3 (N.D. Tex. June 29, 2010) (Lindsay, J.) ("The alleged acts, however, are the basis of this lawsuit and thus outweigh the location of Plaintiff's headquarters."). Ginsburg's original contact with Georgetown officials soliciting his donations occurred when Mr. Conry met with him in Dallas. (App. at 001-002 (Aff. ¶ 2).) It was in these Dallas meetings that the substance of what eventually became the Agreement was discussed and negotiated. (App. at 002 (Aff. ¶ 3).) While the document itself – a simple, three-page donor agreement embodying the substance of what Ginsburg and Georgetown representatives discussed in Dallas – was negotiated and drafted in Washington, D.C., Ginsburg executed the Agreement in Dallas. (*See id.*) The injury resulting from Georgetown's failure to

**Response in Opposition to Georgetown**                                                                                    **Page 7**
**University's Motion to Transfer Venue**
02532-301 | 4835-2360-4243

honor its obligations occurred to Ginsburg in Dallas. Subsequently, most of Georgetown's fraudulent misrepresentations actually occurred in Dallas, and all of its tortious conduct was aimed at Ginsburg at Dallas. (*See*, *e.g.*, *id.* at 001-004 (Aff. ¶¶ 2-12); App. at 005-010 (Ex. A-1); App. at 016 (Ex. A-5); Orig. Compl. ¶¶ 23, 26).)

Nonetheless, Georgetown argues that the District of Columbia has a greater interest in the dispute and that it should not be adjudicated in a "remote part[] of the country" such as the Northern District of Texas.[3] (Motion at 14.) Georgetown first argues that the District of Columbia has a greater interest in the contract dispute simply because the contract document was "negotiated" there and the fitness center is located there. This argument fails for three reasons. First, the contractual relationship between Ginsburg and Georgetown originated in Dallas (App. at 002 (Aff. ¶ 3), the parties' negotiated and determined the substance of the agreement in Dallas (*see id*), Ginsburg executed the Agreement in Dallas (*see id*), and the injury occurred to Ginsburg in Dallas. *See Sabre*, 2010 WL 3855316 at *5 (holding that a contract claim did not accrue in one place and thus the case did "not involve any wholly localized issues" where initial negotiations, execution, and further communications and contacts happened in different places). Second, there is no dispute between the parties about anything that happened in the District of Columbia. *See Fulton*, 2009 WL 2136408 at *7 (stating that the relevant inquiry pertains to facts that the plaintiff must prove). It is undisputed that Georgetown never named the fitness center as agreed. Its reasons for doing so are irrelevant to the contractual claim, much less where that claim should be litigated. Third, Dallas's interest in preventing financial damage to its citizens

---

[3] Certainly, Dallas was not so remote that Georgetown's employees could not come here to solicit donations from and make misrepresentations to Ginsburg, and Dallas is clearly not the "wastelands of Siberia or some remote, distant area of the Continental United States." *Canine Caviar*, 2009 WL 2568206 at *6 (quoting *Jarvis Christian Coll. v. Exxon Corp.,* 845 F.2d 523, 528 (5th Cir.1988)).

**Response in Opposition to Georgetown**                                                                                **Page 8**
**University's Motion to Transfer Venue**
02532-301 | 4835-2360-4243

due to contractual breaches by nonresidents greatly outweighs an interest that the District of Columbia has in the naming rights to a university building of which only the parties to this lawsuit are concerned. *Terry*, 2007 WL 3237515 at *4 (recognizing a local interest in protecting "citizens from non-residents who cause financial damage through breach of contract with its citizens").

Georgetown also makes the bare assertion that any fraudulent misrepresentations that "Georgetown made to Mr. Ginsburg, however characterized, would have been made in the District of Columbia where the relationship between the parties was centered." (Motion at 15.) Georgetown fails to identify, however, any allegations or evidence that those misrepresentations were actually made in or directed at the District of Columbia. Rather, Georgetown employees often traveled to Dallas soliciting donations from Ginsburg and, in the process, making fraudulent misrepresentations to a Dallas resident and directing its tortious activity at Dallas. (App. at 001-004 (Aff. at ¶¶ 2-12).)  *See Robertson*, 2006 WL 1222031 at *6 (holding factor weighs in favor forum at which tortious activity aimed); *Fulton*, 2009 WL 2136408 at *8 (same); *Canine Caviar*, 2009 WL 2568206 at *5 (same). The evidence and the actual allegations outweigh what amounts to Georgetown's mere surmise about where its tortious activity occurred.

Finally, any interest in local commerce would be felt equally by both venues. Thus, the Northern District of Texas has a greater local interest in this dispute. This factor weighs in favor of retaining venue in this Court.

**Response in Opposition to Georgetown**                                                                         **Page 9**
**University's Motion to Transfer Venue**
02532-301 | 4835-2360-4243

**C.      The "Private Factors" Favor Retaining the Plaintiff's Choice of Venue in the
        Northern District of Texas.**

>    *1.      The Parties' Ease of Access to Sources of Proof Is Neutral.*

The first factor, access to sources of proof, "assumes much less importance in the era of

electronic documents" where the parties' "sources of proof are easily accessible electronically."

*JPMorgan Chase Bank, N.A. v. Dixon*, 3:11-CV-00157, 2011 WL 2534601, at *3 (N.D. Tex.

June 24, 2011) (Lindsay, J.); *see also Acumen Enterprises, Inc. v. Morgan*, 3:11-CV-619-L, 2011

WL 5822252, at *6 (N.D. Tex. Nov. 15, 2011) (Lindsay, J.) ("[T]his factor has diminished

importance because most records today are produced in electronic format. As a result, the

location of records becomes largely irrelevant."). The breach of contract and fraud claims in this

case are relatively simple and will not require extensive document production. Indeed, the vast

majority of the relevant documents have either already been produced as attachments to the

pleadings or are in electronic format.

Georgetown presents affidavit evidence asserting that "multiple departments and offices

at Georgetown University that would maintain documents and records relevant to Mr.

Ginsburg's gifts to and relationship with Georgetown University." (Conry Aff. at 1.)

Georgetown does not, however, explain how any documents at these various campus locations

would be relevant to this case and "has not presented evidence, in the form of an affidavit or

otherwise, to demonstrate that the" evidence is immovable or "so voluminous" that their

production to Dallas, would create undue burden. *Acumen*, 2011 WL 5822252, at *6. In the same

vein, while Georgetown opines that it "almost certainly possesses the 'bulk' of records and

tangible things relevant to its decision" to breach its contract with Ginsburg (Motion at 9) it fails

to describe these records or tangible things, explain how they are relevant to Ginsburg's claims,

**Response in Opposition to Georgetown                                              Page 10**
**University's Motion to Transfer Venue**
02532-301 | 4835-2360-4243

or even why they are the "bulk" of relevant material. Georgetown does not meet its burden with respect to this factor, and it is neutral at best.

>    2.    *Georgetown Fails to State Whether Compulsory Process for Non-Party Witnesses Is Necessary.*

"[D]efendants do not identify specific witnesses for whom compulsory process is *necessary* but unavailable," despite naming three non-party witnesses in its brief. *AllChem Performance Products, Inc. v. Oreq Corp.*, 3:11-CV-3577-D, 2013 WL 180460, at *4 (N.D. Tex. Jan. 17, 2013) (Fitzwater, C.J.) (emphasis added). Thus, Georgetown has not met its burden to show that this factor favors transfer. It gives no specifics about the testimony of the three alleged non-party witnesses or whether compulsory process would be necessary to secure their testimony. Further, each non-party is located somewhere other than Washington, D.C. or Dallas and outside of both courts' subpoena powers.

>    3.    *The Cost of Attendance for Willing Witnesses.*

The third factor pertains to "the convenience of the witnesses, most particularly nonparty witnesses who are important to the resolution of the case." *Seeberger Enterprises, Inc. v. Mike Thompson Recreational Vehicles, Inc.*, 502 F. Supp. 2d 531, 539 (W.D. Tex. 2007) (citing 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Fed. Prac. & Proc. § 3851 (3d ed. 1998)); *see also Canine Caviar*, 2009 WL 2568206, at *4 ("The convenience to nonparty witnesses is of particular importance."). Indeed, Courts often decline to consider witnesses that are a party's employees under this factor. *See*, *e.g.*, *USPG Portfolio*, 2011 WL 1103372 at *4 (declining to consider convenience of party's employees, who had negotiated the contract at issue, and thus finding that the movant had "not satisfied its burden of showing that the cost of

**Response in Opposition to Georgetown**                                   **Page 11**
**University's Motion to Transfer Venue**
02532-301 | 4835-2360-4243

witness attendance weighs in favor of transfer"); *see also Caterpillar, Inc. v. ESCO Corp.*, 12-CV-1017, 2012 WL 6618602, at *4 (C.D. Ill. Dec. 18, 2012) (noting that "the convenience of witnesses who are employed by the parties . . . is not an important consideration" because their participation "will be obtained as part of their employment . . . and their compensation and expenses will be paid by their employers"); *Pub. Util. Serv. Corp. v. Leggett & Platt, Inc.*, CIVA 08-1860, 2008 WL 4610241, at *4 (E.D. Pa. Oct. 16, 2008) (noting that "the convenience of these [party-employee] witnesses is not the proper focus" and "that the actual number of witnesses each party would present is not determinative"); *Relational, LLC v. TDMK, LLC*, 07 C 4449, 2008 WL 2704757, at *2 (N.D. Ill. July 7, 2008) (declining to consider party's employees under third factor); *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1084 (N.D. Cal. 2008) (discounting "any inconvenience to the parties' employees").

"The availability and convenience of party-witnesses is generally insignificant because a transfer based on this factor would only shift the inconvenience from movant to non-movant." *Quicksilver, Inc. v. Acad. Corp.*, CIV.A. 3:98-CV-1772R, 1998 WL 874929, at *2 (N.D. Tex. Dec. 3, 1998) (Buchmeyer, C.J.); *see also Frost v. ReliOn, Inc.*, 3:06-CV-0822-G, 2007 WL 670550, at *3 (N.D. Tex. Mar. 2, 2007) (Fish, C.J.) (noting that transfer based on party witness convenience "would simply shift expenses from one party to the other"); *accord Dagel*, 2011 WL 3518281 at *8 ("The court considers the convenience of the parties here a neutral factor because one party and its potential willing witnesses will be inconvenienced regardless of the venue chosen."). The Court should ignore "any potential inconvenience to defendants and their witnesses" especially where it "is only as a result of the allegedly wrongful conduct of defendants that several witnesses are located [in the transferee forum]." *Nelson v. R. Greenspan*

**Response in Opposition to Georgetown**                                                    **Page 12**
**University's Motion to Transfer Venue**
02532-301 | 4835-2360-4243

*& Co., Inc.*, 613 F. Supp. 342, 346 (E.D. Mo. 1985)

The situation here illustrates why "[c]ases should not be transferred where the only practical effect is to shift inconvenience from the moving party to the nonmoving party." *CIT Group/Commercial Services, Inc. v. Romansa Apparel, Inc.*, 3:02-CV-1954-P, 2003 WL 169208, at *4 (N.D. Tex. Jan. 21, 2003). Ginsburg's Original Complaint and Georgetown's Motion identify four Georgetown employees, each of which were involved in soliciting and breaching the contract between Ginsburg and Georgetown and making fraudulent misrepresentations to Ginsburg in Dallas: Kevin Conry, President DeGioia, former Dean Areen and former Dean Aleinikoff. It would make little sense to disregard Ginsburg's choice of forum simply because Georgetown used four employees to defraud one donor. *See Greenspan & Co.*, 613 F. Supp. at 346 (ignoring factor where wrongful conduct resulted in inconvenience to defendant's witnesses); *see also Kyros v. N. Am. Bioproducts Corp.*, 4:09CV3041, 2009 WL 1175167, at *3 (D. Neb. Apr. 28, 2009) (noting that the "sheer numbers of witnesses will not decide which way the convenience factor tips" where it would "[m]erely shift[] the inconvenience from one side to the other"). Thus, the convenience to Georgetown's employees should not be considered under this factor. *See, e.g., Dagel*, 2011 WL 3518281 at *8 (noting that factor was neutral where "one party and its potential willing witnesses will be inconvenienced regardless of the venue chosen"); *USPG Portfolio*, 2011 WL 1103372 at *4 (declining to consider convenience of party's employees); *Quicksilver*, 1998 WL 874929 at *2 (noting that the "convenience of party-witnesses is generally insignificant").[4]

---

[4] Georgetown relies heavily on *Busch v. Robertson* for the proposition that the sheer number of their party witnesses located in the District of Columbia favors transfer. 2006 WL 1222031, at *5-7. *Robertson* is easily distinguishable. There, the individual plaintiff had traveled to and directed conduct at the transferee forum, yet sought to force the defendant's party witnesses to travel to his forum. *See id.* at *6 (noting that plaintiff "directed all his

Response in Opposition to Georgetown                                    Page 13
University's Motion to Transfer Venue
02532-301 | 4835-2360-4243

Moreover, it would be especially inequitable to credit the inconvenience of these particular employees, as Georgetown fails to explain why travel to Dallas is now inconvenient when their employees were more than willing to travel to Dallas to solicit Ginsburg's donations and make fraudulent misrepresentations to him. *See, e.g., Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (stating that § 1404(a) requires an "individualized, case-by-case consideration of convenience and *fairness*") (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964)); *see also Genentech*, 566 F.3d at 1346 (noting that movant's past utilization of claimed "inconvenient" forum could be considered if that lawsuit "involved the same parties, witnesses, evidence, and facts").

For instance, despite the contentions in Mr. Conry's affidavit that traveling to Dallas would impose significant burdens, his history and familiarity with Dallas say otherwise. Conry found it convenient to meet with Ginsburg in Dallas several times from 1999 to 2010 to solicit donations. He continued to visit Dallas, including in July 2003 and as late as May 2010, even showing his familiarity with Dallas restaurants while setting up a lunch meeting with Ginsburg. (App. at 003-004 (Aff. ¶¶ 10-12); App. at 011-013, 016 (Ex. A-2, A-5).) (And even on its own terms, Conry's affidavit testimony regarding his position at the university as a significant fundraiser and world traveler contradicts his claim that his oversight of public safety is a "24/7/365" responsibility.) On a regular basis after the Agreement's execution, one or a combination of Conry, Mr. DeGioia, Mr. Aleinikoff and Mrs. Areen met with Ginsburg in Dallas

---

communications toward" defendant, "traveled to Virginia to appear on *The 700 Club*," authorized use of his pictures in Virginia, filmed his appearance on *The 700 Club* in Virginia, and "directed his demands for an endorsement contract to defendant in Virginia"). Here, conversely, the party and witnesses that complain of inconvenience had traveled to and directed conduct at *Dallas*, and now ask this Court to disregard Ginsburg's chosen forum and force him to travel to them to pursue his lawsuit. Additionally, in *Robertson* there was already pending litigation in the transferee forum instigated by the defendant that further favored transfer. *Id.* at *7.

**Response in Opposition to Georgetown**                                                                      **Page 14**
**University's Motion to Transfer Venue**
02532-301 | 4835-2360-4243

to solicit donations and assure him that Georgetown would honor its obligations under the Agreement. (*See id.*) Section 1404(a) requires consideration of both fairness and convenience, and fairness prevents a party, who repeatedly traveled to Dallas over a period of 12 years soliciting and making fraudulent misrepresentations to Ginsburg, from later crying inconvenience when confronted with a lawsuit in Dallas based on that conduct.

Finally, Georgetown also names three former employees that "had dealings with Mr. Ginsburg" as potential non-party witnesses. (*See* Conry Aff. ¶ 5.)[5] But the movant must clearly specify the non-party witnesses to be called and state what their testimony will cover. *Nobel Ins. Co. v. Acme Truck Line, Inc.*, CIV. A. 3:99CV2950G, 2000 WL 298908, at *2 (N.D. Tex. Mar. 21, 2000) (quoting *Continental Airlines, Inc. v. American Airlines, Inc.,* 805 F. Supp. 1392, 1396 (S.D.Tex.1992)); *Continental Airlines*, 805 F. Supp. at 1396 ("Where, as here, the moving party has merely made a general allegation that certain witnesses are necessary, without identifying them or the substance of their testimony, the motion must be denied."). Georgetown makes general allegations that these "potential" former employees may be material, but fails to identify their former positions at Georgetown or the substance of their testimony. Thus, these assertions do not satisfy Georgetown's burden to show that this factor favors transfer.

4.    *All Other Practical Problems.*

Georgetown presents no argument regarding this final factor, and thus fails to meet its burden on it. If anything, this factor slightly favors retaining venue in the Northern District of

---

[5] While Conry's affidavit states that the former employees "had dealings with Mr. Ginsburg," Georgetown's Motion asserts, without evidence, that two of the former employees "had substantial dealings with Mr. Ginsburg and the donor transactions at issue while they were employed at Georgetown." (Motion at 9 n.1.) Ms. Matheron was the tour guide on Ginsburg's daughter's prospective student campus visit. (App. at 004 (Aff. ¶ 14).) Ginsburg has no recollection of ever meeting Mr. Seifert or Mr. Goodwin. (*See id.*)

**Response in Opposition to Georgetown**                                    **Page 15**
**University's Motion to Transfer Venue**
02532-301 | 4835-2360-4243

Dallas because the case is already here. Unlike other cases where this Court granted transfer, there is no corresponding or parallel lawsuit pending in the District of Columbia. *Cf. Stratmark, Ltd. v. Cross Mediaworks, Inc.*, 3:10-CV-0780, 2010 WL 5106442, at *5 (N.D. Tex. Dec. 14, 2010) ("*Frankly, it is nonsensical for this action to remain in this district in light of the two pending related cases in Oklahoma, and this alone is sufficient to transfer this action.*") (emphasis in original); *Robertson*, 2006 WL 1222031 at *6 (noting parallel lawsuit in transferee forum).

**D.      Georgetown Has Failed to Meet Its Significant Burden as the Balance of Factors Favors Retaining Venue in the Northern District of Texas.**

Georgetown fails to meet its burden of showing that any of the four private factors favor transfer, as each is either neutral or favors the Plaintiff's choice of forum. Two of the public factors – relative congestion and local interests – also favor this Court's retention of venue. Thus, Georgetown has failed to meet its burden of showing that the factors favor – much less *strongly* favor – transfer or that the District of Columbia is *clearly* the more convenient venue. The Motion should therefore be denied.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Scott K. Ginsburg respectfully requests that this Court deny Defendant Georgetown's Motion to Transfer this case to the United States District Court for the District of Columbia.

Dated: April 30, 2013

Respectfully submitted,

/s/ John T. Cox III
John T. Cox III
Texas Bar No. 24003722
tcox@lynnllp.com
David S. Coale
Texas Bar No. 00787255
dcoale@lynnllp.com
Christopher J. Schwegmann
Texas Bar No. 24051315
cschwegmann@lynnllp.com
Nicholas J. Chapleau
Texas Bar No. 24069494
nchapleau@lynnllp.com
**LYNN, TILLOTSON, PINKER & COX, L.L.P.**
2100 Ross Avenue
Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3000
Facsimile: (214) 981-3839

ATTORNEYS FOR PLAINTIFF SCOTT K. GINSBURG

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above and foregoing document has been served on all counsel of record as indicated below, on April 30, 2013.

**Via ECF:**
Bruce D. Oakley
bruce.oakley@hoganlovells.com
Hogan Lovells US LLP
700 Louisiana Street
Suite 4300
Houston, TX 77002

/s/ John T. Cox III
John T. Cox III