**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SCOTT K. GINSBURG,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:13-CV-0952-L-BK** |
| | § | |
| **GEORGETOWN UNIVERSITY,** | § | |
| **Georgetown.** | § | |

## FINDINGS, CONCLUSION AND RECOMMENDATION

Pursuant to the District Court's order of referral (Doc. 14), Defendant Georgetown University's *Motion to Transfer Case Out of District/Division* (Doc. 9) is now before the Court. After considering the relevant pleadings and applicable law, it is recommended that the motion to transfer be **GRANTED**.

## BACKGROUND

This action stems from a contractual dispute between Scott K. Ginsburg ("Plaintiff") and Georgetown University ("Georgetown"). (Doc. 1, 7). Plaintiff is an alumnus of the Georgetown University Law Center. (Doc. 1 at 2). Between late 1999 and early 2000, Plaintiff met in Dallas with several Georgetown personnel, including Kevin Conry, Vice President of Strategic Development and External Affairs and Associate Dean of External Affairs of the Law Center, to discuss Plaintiff's potential involvement in Georgetown's development plans for the Law Center. (Doc. 1 at 2-3, 4). As a result of the meetings, on March 30, 2000, Plaintiff and Georgetown signed a gift agreement ("the Agreement"), in which Plaintiff pledged to donate $5,000,000 to Georgetown University Law Center to build a sports and fitness center. (Doc. 1 at 3). Plaintiff alleges that the Agreement provided that Georgetown was to name the sports and fitness center after him. (Doc. 1 at 6, 13). However Georgetown contends that Plaintiff agreed to relinquish the naming rights of the sports and fitness center if he was found to have engaged in insider

trading in a lawsuit he was involved in at the time. (Doc. 7 at 14, 16).

On June 27, 2003, Plaintiff and Georgetown entered into a second gift agreement, in which Plaintiff pledged to donate an additional $11,000,000 to Georgetown. (Doc. 1 at 7). Ultimately, however, Georgetown did not name the sports and fitness center after Plaintiff. (Doc. 1 at 9). While Plaintiff avers that he expressed his discontent over the naming issue in an email message to Conry, Georgetown maintains that Plaintiff did not indicate any issue with the sports and fitness center not being named after him when he attended the Grand Opening Celebration of the sports and fitness center in 2004, at which he was specially recognized and honored for his contribution. (Doc. 7 at 19, 20; Doc. 7-1 at 15-21). On March 4, 2013, Plaintiff brought this action against Georgetown for breach of contract, fraud and restitution. (Doc. 1).

On April 4, 2013, in addition to its answer and counterclaims for breach of contract and promissory estoppel, Georgetown filed the motion *sub judice*, seeking a discretionary transfer of venue under 28 U.S.C. § 1404(a) to the United States District Court of the District of Columbia. (Doc. 9). Georgetown argues that most of the events giving rise to Plaintiff's claims occurred in the District of Columbia, and that the bulk of the witnesses and documentary evidence are located there. (Doc. 10 at 11; Doc. 19 at 2). Plaintiff counters that the motion to transfer should be denied because Georgetown has not met its burden to show that transfer would be convenient for the parties and witnesses and in furtherance of justice. (Doc. 16 at 5, 8). Plaintiff also avers that (1) the fraudulent misrepresentations occurred in Dallas, Texas; (2) the contract between the two parties arose in Dallas, Texas; and (3) Georgetown's conduct was harmful to him, a resident of Dallas, Texas. *Id.* at 5.

## APPLICABLE LAW

Section 1404(a) of Title 28 provides that "[f]or the convenience of parties and witnesses,

in the interest of justice, a district court may transfer any civil action to another district or division where it might have been brought." 28 U.S.C. § 1404(a). The decision to transfer is left to the broad discretion of the District Court. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008). Transfer should be granted where necessary to prevent waste of time, energy, and money, and to protect litigants, witnesses, and the public from unnecessary inconvenience and expense. *Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F. Supp. 2d 808, 811 (N.D. Tex. 2002) (Fitzwater, J.). In determining whether transfer is appropriate, the Court must first determine if the suit could have been filed in the alternate venue, and then weigh the parties' private interests in convenience and the public interest in the fair administration of justice. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

The private interest factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen*, 545 F.3d at 315 (citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)). The public interest factors include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* However, the "court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other." *Sivertson v. Clinton*, No. 3:11–CV–0836–D, 2011 WL 4100958, at *3 (N.D. Tex. Sept 14, 2011) (Fitzwater, C.J.) (internal citations omitted). The movant has the burden to demonstrate why venue should be changed. *Volkswagen*, 545 F.3d at 314 n.10 (citing *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.

1966)).

Plaintiff does not contest that this action could have been brought in the District of Columbia. (Doc. 16). *See* 28 U.S.C. § 1391(b) (venue in a diversity case is appropriate in a judicial district where any defendant resides or in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated). Thus, the Court's focus is on the convenience of the parties and witnesses, and whether the interests of justice would be served if this action is tried in the District of Columbia rather than the Northern District of Texas.

## ANALYSIS

*Private Interest Factors*

As to relative ease of access to the sources of proof, Georgetown contends that transfer would facilitate access to the bulk of the relevant documentary evidence and records of the relationship between Plaintiff and Georgetown, which is located in the District of Columbia, where Georgetown and the subject sports and fitness center are also located. (Doc. 10 at 12). Georgetown additionally avers that all of Plaintiff's relevant communications were with individuals/potential witnesses who are located in or near Washington, D.C. *Id.* at 14 -15. Plaintiff counters that this factor is neutral, contending that all of Georgetown's "sources of proof are easily accessible electronically," thus, access to sources of proof, "assumes much less importance in the era of electronic documents." (Doc. 16 at 14) (citing *JP Morgan Chase Bank, N.A. v. Dixon*, 3:11-CV-00157, 2011 WL 2534601, at *3 (N.D. Tex. June 24, 2011)).

Contrary to Plaintiff's argument, the "Fifth Circuit [has] held that despite technological advances that [have] made the physical location of documents less significant, the location of sources of proof remains a meaningful factor in the transfer analysis." *AT&T Intellectual Prop.*

*I, L.P. v. Airbiquity, Inc.*, No. 3:08-CV-1637-M, 2009 WL 774350, at *2; *see also Volkswagen*, 545 F.3d at 316 ("the sources of proof requirement is a meaningful factor in the analysis") (internal citations omitted). Here, Plaintiff's claims stem from contractual agreements with Georgetown and, based on the facts posited in the complaint, it is logical that Georgetown maintains in the District of Columbia greater access to the source of the evidence relating to the parties' agreements and of their relationship. Moreover, Plaintiff does not suggest that the source of the evidence they anticipate offering regarding the alleged agreements is located in Texas. Consequently, this factor favors transferring this case to the District of Columbia. *See AT&T Intellectual Prop.*, 2009 WL 774350, at *4 (holding that this factor slightly favored transfer where the defendant showed that relevant documents resided in transferee district).

As to the witnesses, as is germane to the Court's decision, Georgetown avers that, excluding Plaintiff, there are four potential facts witnesses: (1) Kevin Conry; (2) Georgetown University President John DeGioia; (3) former Dean of the Law Center, Judith Areen; and (4) former Dean of the Law Center Alexander Aleinikoff, who presently is on a leave of absence. (Doc. 10 at 14). According to Georgetown, these four individuals reside in or near Washington, D.C. *Id.* at 15. Plaintiff does not suggest that there are any additional witnesses. Because this Court's subpoena power does not extend to the District of Columbia, the availability of compulsory process to secure the attendance of witnesses weighs in favor of transfer. *See* FED. R. CIV. P. 45 (specifying the geographical limits on a district court's subpoena power). Moreover, the Court of Appeals for the Fifth Circuit has determined that "when the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen*, 545 F.3d at 317. While the Plaintiff would

undoubtedly incur expenses in traveling to Washington, D.C., they would be significantly less than those Georgetown's representatives and the potential witnesses who reside in or near the District of Columbia would incur to travel to Dallas, Texas. This is not a matter of mere inconvenience; the only potential fact witness identified who resides in this district, and who is within the subpoena reach of this Court is Plaintiff. It is apropos to assume that by engaging in transactions with persons and entities located and/or residing in the District of Columbia, Plaintiff should have anticipated the possibility of having to travel to there to vindicate his rights in the event of a contract breach.

Thus, the Court finds that the private interest factors support the discretionary transfer of venue to the District of Columbia.

*Public Interest Factors*

In discussing the first of the public interest factors, Georgetown avers that the Northern District of Texas has "approximately 29% more filings, 215% more cases pending, 3 fewer judgeships and approximately 374% more civil filings and 269% more pending cases per judgeship than the District of Columbia," according to its comparison of the districts' Judicial Caseload Profile. (Doc. 10 at 17; Doc. 19 at 9). Plaintiff countered in presenting evidence that the Northern District of Texas's "median time from filing to disposition and/or trial is significantly shorter" and thus, more efficient than the District of Columbia. (Doc. 16 at 9-10). To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor. *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). However, the speed of one court compared to another should not alone outweigh all of the other factors when deciding whether a case should be transferred to another venue. *Id. Genentech, Inc.* also informs us that the factor of administrative difficulties "appears to be the most

speculative," as "case-disposition statistics may not always tell the whole story." 566 F.3d at 1347. Upon consideration, the Court concludes that this factor weighs in favor of the case remaining in this district.

As to the localized interest factor, there is certainly public interest in litigating this case in Texas since it involves claims of damage to a Texas resident. However, there is an even greater local interest in having the case heard in the District of Columbia, the site of Georgetown and the real property the subject of this lawsuit. The obvious personal import to Plaintiff aside, because of its location, the name of the sports and fitness center is naturally of much greater public interest to the individuals who see and/or use it each day. Moreover, according to the complaint, the alleged breach of contract was the failure of the sports and fitness center to bear Plaintiff's name; thus, said breach occurred in the District of Columbia. *See Frederick v. Advanced Fin. Solutions, Inc.*, 558 F. Supp. 2d 699, 705 (E.D. Tex. 2007) (concluding that the factor concerning having localized interests decided at home weighed in favor of a transfer when a "substantial portion" of any alleged breach of contract would have occurred in the requested transfer forum).

Finally, Georgetown correctly asserts that the District Court for Northern District of Texas and the District Court for the District of Columbia are equally capable of applying the applicable state/local law. Thus, the public factor concerning the familiarity of the forum with the law that will govern favors neither party's position.

Considering the public factors as a whole, they also favor a discretionary transfer to the District of Columbia as the most convenient forum.

## CONCLUSION

The Court's analysis of the relevant private and public factors favors the discretionary transfer of this case to the District Court for the District of Columbia for the convenience of the parties and witnesses and in the interest of justice. Accordingly, it is recommended that Defendant Georgetown University's *Motion to Transfer Case Out of District/Division* (Doc. 9) be **GRANTED.**

**SIGNED** August 8, 2013.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE