# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SCOTT K. GINSBURG,<br><br>Plaintiff,<br><br>–v–<br><br>GEORGETOWN UNIVERSITY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No. 1:13–cv–01312–RBW<br>)<br>)<br>)<br>)<br>) |

## FIRST AMENDED COMPLAINT

Plaintiff Scott Ginsburg ("Ginsburg") files this Amended Complaint against Defendant Georgetown University ("Georgetown"), and respectfully shows as follows:

### I. PARTIES

1.   Plaintiff Scott K. Ginsburg is a citizen of the State of Texas.

2.   Defendant Georgetown University is a District of Columbia sole proprietorship with its principal place of business at 3700 O St NW, Washington, DC 20057.

### II. JURISDICTION AND VENUE

3.   This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(a) because Plaintiff is a citizen of Texas, Defendant is a citizen of the District of Columbia, and the amount in controversy exceeds $75,000.00.

4.   Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## III. FACTUAL BACKGROUND

### A. Ginsburg Generously Agreed to Donate $5,000,000 to Georgetown in Return for Naming Rights to the Scott K. Ginsburg Health and Fitness Center.

5. Ginsburg attended the Georgetown University Law Center (the "Law Center") as an evening student, working during the day as a staff director for two U.S. Senate subcommittees. He graduated with a Juris Doctorate in 1978. He became a successful businessman, founding and running several companies in the media industry.

6. Kevin Conry, the Vice President of Strategic Development and External Affairs and Associate Dean of External Affairs of the Law Center, solicited donations to the Law Center from Ginsburg beginning in 1999. Ginsburg met with Conry – as well as other Georgetown officials – on a number of occasions to discuss Georgetown's development plans for the Law Center, including a prospective sport and fitness center, and Ginsburg's possible involvement in those plans through a monetary gift to the university. Conry represented to Ginsburg in these meetings that Georgetown was interested in naming the prospective sport and fitness center after a benefactor who contributed a sufficient donation for its construction.

7. Ginsburg decided to make a large donation to his alma mater for the construction of the sport and fitness facility. As Ginsburg later described his reasons for donating: "Remembering my own experience at Georgetown, I wanted to contribute to the quality of students' lives there. Recreation and fitness are an important part of law school life, and I'm proud to be able to play this part in expanding the Law Center's facilities. I hope my gift will inspire other alumni to support the Law Center." Exhibit B (September 2000 Press Release).

### B. Georgetown and Ginsburg Executed a Contract Reflecting Their Agreement.

8. On March 30, 2000, Georgetown and Ginsburg entered into an Agreement (the "Agreement") by which Ginsburg pledged to donate $5,000,000 to Georgetown for the

construction of a fitness center at the Georgetown University Law Center. Exhibit A (Agreement). The Agreement also granted Ginsburg naming rights to the fitness center, stating clearly: "The Fitness Center shall be named the "Scott K. Ginsburg Health and Fitness Center (the "Name")." Id. ¶ 8(a).

9.  Georgetown also agreed that "[t]he Name shall be prominently etched and displayed above the main entrance of the Fitness Center in a manner (and with similar boldness, prominence, and importance) similar to that of the Edward Bennett Williams Law Library, the Bernard S. & Sarah M. Gewirz Student Center, and Bernard P. McDonough Hall." Id. ¶ 8(b).

10. Georgetown also agreed that "[a]ppropriate recognition of [Ginsburg] shall be placed inside the Fitness Center, in one or more prominent locations, one of which may include a mutually agreeable description and photo-portrait of [Ginsburg]." Id. ¶ 8(c).

11. Georgetown also agreed that "[Georgetown] shall utilize [Ginsburg's] full name ("Scott K. Ginsburg") whenever and wherever the Fitness Center is described or referenced. Without limitation, [Georgetown] shall utilize the full Name in campus signage, brochures and bulletins, promotional literature, Fitness Center membership solicitations, and in correspondence and communications about the Fitness Center. ([Georgetown] acknowledges that its obligation to comply materially with this condition *is of the essence of this Agreement . . . .")*. Id. ¶ 8(d) (emphasis added).

12. On September 1, 2000, Georgetown issued a press release announcing the future construction of the Scott K. Ginsburg Health and Fitness Center. The press release states: "Ginsburg has pledged $5 million for a sports and fitness facility that will bear his name. The Scott K. Ginsburg Health and Fitness Center will be designed to provide state-of-the-art athletic,

health, fitness and recreational facilities for GULC students, faculty and staff." Exhibit B (September 2000 Press Release).

**C.    Georgetown Continued to Solicit Donations from Ginsburg.**

15.    Over the next ten years, Conry continued to visit Ginsburg to solicit and encourage further donations. On various occasions, Conry was accompanied by John DeGioia, the President of Georgetown University; Judith Areen, the Dean of Georgetown Law Center at the time the agreement was executed and the fitness center was built; and Alex Aleinikoff, who succeeded Areen as the Dean of Georgetown Law Center. Aleinikoff visited Ginsburg at his home in Dallas after Ginsburg's son was born, bringing Georgetown baby clothes as a gift to Ginsburg.

16.    After one such visit in December 2001, President DeGioia sent Ginsburg a thank you letter thanking him for "opening your beautiful home to me." He also thanked Ginsburg for his "leadership gift to the Law Center. The Scott K. Ginsburg Sport and Fitness Center will enhance student life for generations to come. Thank you, too, for being willing to consider increasing your gift. . . . I have asked Kevin Conry to send you the projected operational costs for the Sports and Fitness Center. Should you decide to augment your gift, perhaps we could put it towards endowing the operational costs of the Center." Exhibit C (12/28/01 JJD Letter to SKG). President DeGioia visited Dallas several more times on university business to solicit donations, including a speaking engagement with Georgetown alumni at Brookhollow Country Club at which he sat with Ginsburg.

17.    Despite DeGioia's praise of Ginsburg while soliciting additional donations in 2001, in addition to his repeated and continuous solicitation of Ginsburg over the next ten years including a 2009 letter thanking Ginsburg for his "recent, generous payment to support the Scott

4

K. Ginsburg Sport & Fitness Center at Georgetown University Law Center" and other communications as late as 2010, DeGioia would tell Ginsburg in 2013 that he had no recollection of these events or Ginsburg's naming rights.  Exhibit D (3/24/09 JJD Letter to SKG).

**D.     Ginsburg Encountered Legal Issues Unrelated to His Relationship with Georgetown.**

18.     Before Ginsburg entered into the Agreement and during the time that Georgetown officials were soliciting his donations, the SEC began a civil action against Ginsburg for allegedly disclosing material non-public information to his father and brother.  Ginsburg fully disclosed this legal issue to Georgetown prior to the Agreement.  Georgetown assured him that this situation was not a problem for the university and entered into the Agreement with full knowledge and awareness that there was a pending SEC action against Ginsburg.  Georgetown never expressed any concern about Ginsburg's issues with the SEC during its initial pursuit of him and during the preparation of the Agreement.

19.     In 2002, the SEC pursued the charges against Ginsburg at trial. Following a jury verdict for the SEC in the spring of 2002, the district court overturned the jury verdict and entered judgment in favor of Ginsburg.  The SEC appealed, and in 2004, the Eleventh Circuit reversed and reinstated the jury verdict against Ginsburg.

**E.     Georgetown Attempted to Amend the Agreement, but Ginsburg Refused.**

20.     On May 2, 2002, approximately two weeks after the verdict against Ginsburg, Dean Areen sent a letter to Ginsburg in Texas.  Exhibit E (5/2/02 JA Letter to SKG and Attachment). Though Georgetown had shown no hesitation to continue soliciting Ginsburg's donations despite his legal issues, the letter requested that Ginsburg sign an amendment to the 2000 Agreement and relinquish naming rights to the fitness center. In the letter Areen states, "if the jury verdict is overturned . . . I intend to go immediately to the Board for approval to name

5

the building for you. In the meantime, we will find lots of ways to honor your gift without generating negative media coverage." *Id.* The proposed amendment stated that "[Ginsburg] and [Georgetown] agree to delete in its entirety paragraph 8(a)-(d) entitled 'Naming Rights' from the Agreement" and substitute that paragraph with one promising that GU will provide "Appropriate recognition of [Ginsburg] . . . placed inside the Fitness Center, in one or more locations, one of which may include a mutually agreeable description and photo-portrait of SKG." *Id.*

21. Ginsburg refused to sign the proposed amendment, and it was never executed.

**F.  Georgetown Continued to Solicit Donations from Ginsburg Representing That It Would Honor His Naming Rights as It Had Agreed.**

22. Ginsburg's refusal to amend the Agreement and relinquish the naming rights to which Georgetown originally agreed did not stop Georgetown officials from promoting Ginsburg's gift for fundraising purposes. In 2001, Georgetown inducted Ginsburg into its "1789 Society" for noted alumni and donors and did not attempt to remove him from that Society following the jury verdict against him. The induction proclaimed: "Mr. Ginsburg's gift will fund the Scott K. Ginsburg Sport and Fitness Center on the Law Center campus . . . The Scott K. Ginsburg Sport and Fitness Center is a vital element of the Law Center Campus Completion Project . . . ." Exhibit F (Excerpt, 1789 Society Members Book).

23. Nor did Ginsburg's refusal to amend the Agreement stop Georgetown officials from soliciting further donations from Ginsburg. Exhibit G (7/2 and 7/3 Fax Cover Sheets). Following Dean Areen's unsuccessful effort to secure Ginsburg's agreement to relieve Georgetown of its naming obligation, and in an effort to secure more donations from Ginsburg, Georgetown officials expressly represented to Ginsburg that Georgetown would, indeed, honor its Agreement to name the fitness center the Scott K. Ginsburg Sport and Fitness Center, but would defer the actual naming of the fitness center until a future date, after publicity from the

SEC proceeding had passed. President DeGioia himself promised Ginsburg that Georgetown would honor the naming rights in the future.

24. Based on Georgetown's continuing promises to honor the Agreement to name the fitness facility after him, Ginsburg's commitment to the school continued and grew. On June 27, 2003 he entered into a "Gift Agreement" with Georgetown, in which he pledged to donate an additional $11,000,000 as the culmination of sustained, intense efforts by Georgetown to draw Ginsburg into the Georgetown community as a prominent and valued alumnus. Exhibit H (Gift Agreement). Ginsburg was invited to join the Georgetown Board of Visitors, welcomed to university functions, invited on university trips, and generally embraced by the university, all with the goal of extracting ever more money from him. The Gift Agreement also integrated Ginsburg's remaining payments under the earlier Agreement, while not modifying any obligations under that Agreement. *Id.*

25. Ginsburg entered this Agreement based on the express assurances from Georgetown officials that his naming rights in the Agreement would be honored. President DeGoia represented to and agreed with Ginsburg that in return for Ginsburg's continuing and increasing financial support, including a $5 million fund to be disbursed at DeGoia's sole discretion, the University would live up to its obligation to name the fitness center after Ginsburg and that the naming of the facility would occur at some point in the future, not on the date the facility opened.

26. Georgetown sent Ginsburg a receipt for an installment of his donation made on September 19, 2003. The receipt notes Ginsburg's most recent payment under the agreements, allocated to the "Scott K. Ginsberg [sic] Sport & Fitness Center." Exhibit I (Receipt).

27.     Conry, Aleinikoff, and DeGioia continued to solicit donations from Ginsburg. On a regular basis, one or a combination of those individuals met with Ginsburg and, on each occasion, continued to assure him that Georgetown would honor its Agreement to grant Ginsburg his naming rights to the Scott K. Ginsburg Sport & Fitness Center. In 2006, Georgetown published an updated version of its "1789 Society" book. Again, the republication proclaimed: "Mr. Ginsburg's gift will fund the Scott K. Ginsburg Sport and Fitness Center on the Law Center campus . . . The Scott K. Ginsburg Sport and Fitness Center is a vital element of the Law Center Campus Completion Project . . . ."

28.     In the fall of 2006, Ginsburg's daughter, Laura, started at the Georgetown Law Center. Georgetown officials were aware, based on discussions with Ginsburg, of the sensitivity of naming a Law Center building after Ginsburg while his daughter was attending the school. Georgetown officials continued to assure Ginsburg that the fitness center would be named after him and that his name would be displayed as stated in the Agreement, and all parties agreed and understood that the naming would not occur until after Laura Ginsburg graduated from the Law Center.

29.     On January 11, 2009, Ginsburg received a Letter from Dean Aleinikoff stating that it "was a pleasure to receive [Ginsburg's] recent pledge payment" to the "Scott K. Ginsburg Sport & Fitness Center at Georgetown University Law Center." Exhibit J (1/11/09 TAA Letter to SKG). On March 24, 2009, Ginsburg received a letter from President DeGioia thanking him for his "recent, generous payment to support the Scott K. Ginsburg Sport & Fitness Center at Georgetown University Law Center." Exhibit D (3/24/09 JJD Letter to SKG).

30.     Georgetown officials never stated that they would not live up to the Agreement, or that they would not put Ginsburg's name on the "Sport and Fitness Center." The building was

not named for anyone else and carried no other donor's name. Georgetown also never offered, let alone agreed, to refund Ginsburg's money to him, despite Georgetown's failure to comply with the Agreement.

**G.    Georgetown Fails to Honor its Agreement with Ginsburg.**

31.    Despite Ginsburg's continued donations, as Laura Ginsburg's graduation from Georgetown University Law Center approached, Ginsburg became concerned that Georgetown did not intend to live up the Agreement and its promises, and would not name the fitness center after him once Laura had graduated from the Law Center.  On March 5, 2010, Ginsburg sent an email to Conry expressing his displeasure with Georgetown's failure to recognize his commitments and contributions to the Law Center.  Exhibit K (3/5/10 SKG Email to KC). In follow-up conversations with Georgetown officials, Ginsburg demanded that Georgetown fully perform its obligation to honor his naming rights to the fitness center.  Months of inconclusive communication, and promises by Conry that a solution to the fitness center naming dispute would be found, culminated in an in-person meeting between Ginsburg and President DeGioia in February of 2013. At this meeting, DeGioia told Ginsburg that "you will be mad at me but I do not have any recollection" of their correspondence or Georgetown's commitments to Ginsburg about naming the fitness center.

32.    His options exhausted, Ginsburg filed this suit to seek redress from Georgetown. It is now apparent that since 2002, Georgetown not only was not in fact committed to recognizing Ginsburg's generosity by naming the sports center for him, but each of the foregoing oral and written representations to him about its claimed commitment was false, made only to entice him to give Georgetown more money. In reliance on Georgetown's false representations

and manipulative conduct, Ginsburg donated a total of at least $8 million to Georgetown, including his completed original $5,000,000 pledge in the Agreement.

33. Ginsburg has asserted his claims against Georgetown within any applicable limitations periods, as Georgetown promised that it would perform its responsibility to honor Ginsburg's naming rights after May 2010 – when his daughter left Georgetown, and, in reliance on those promises and assurances, Ginsburg agreed to make and in fact made significant additional contributions to the Law Center to complete construction of the fitness facility and to fund other construction at the Law Center.  Alternatively, any limitations period was tolled because the nature of the injury was not discoverable (as only Georgetown knew of its real intentions), because Georgetown lulled Ginsburg into believing that Georgetown would perform its obligations, because Georgetown fraudulently concealed its true intentions from Ginsburg, and because Georgetown is equitably estopped from invoking the statute of limitations after an intentional and sustained campaign of misrepresentations toward Ginsburg.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

34. Ginsburg repeats and re-alleges all of the paragraphs above and below as though fully set forth herein.

35. A contract existed between Ginsburg and Georgetown. By the terms of the Agreement, Georgetown agreed to grant Ginsburg naming rights to the Scott K. Ginsburg Sport & Fitness Center. In return, Ginsburg agreed to donate $5,000,000 to Georgetown for the purpose of building the Scott K. Ginsburg Sport & Fitness Center.

36. The parties agreed that Georgetown could defer performance of its obligation to name the Sport & Fitness Center after Ginsburg until after Laura Ginsburg graduated from Georgetown University Law Center.

37. Georgetown's actions and omissions, including but not limited to those actions described above, have breached the agreements between the parties.

38. Ginsburg has fulfilled all of his contractual obligations in all material respects. As a result of Georgetown's breach, Ginsburg suffered harm and seeks recovery of his damages and restitution of the benefit he conferred upon Georgetown in reliance on its commitment.

## SECOND CAUSE OF ACTION
## FRAUD/FRAUDULENT INDUCEMENT

39. Ginsburg repeats and re-alleges all of the paragraphs above and below as though fully set forth herein.

40. As detailed above, Georgetown made material representations to Ginsburg that were false.

41. When Georgetown made the representations, Georgetown knew the representations were false or made the representations recklessly, as positive assertions, and without knowledge of their truth. Georgetown also promised future conduct with no intention to perform. Georgetown intended to induce Ginsburg to make further donations to the university and to enter into agreements about donations based on the false representations.

42. Ginsburg relied on Georgetown's false representations in making further donations to the university. Ginsburg also entered into agreements based on Georgetown's false representations.

43. The false representations caused Ginsburg's injury.

4273676.5

44. Ginsburg seeks recovery of all damages caused to him by Georgetown's fraud, including restitution of the funds obtained from him by misrepresentation.

### THIRD CAUSE OF ACTION
### RESTITUTION

45. Ginsburg repeats and re-alleges all of the paragraphs above and below as though fully set forth herein.

46. Ginsburg conferred a benefit upon Georgetown in the amount of at least $8 million.

38. Georgetown had an appreciation and knowledge of this benefit and in fact solicited the benefit.

47. Georgetown wrongfully secured or passively received the benefit.

48. It is unconscionable for Georgetown to now retain the benefit.

49. Ginsburg seeks recovery of at least $8 million as the full amount of Georgetown's unjust enrichment.

## V. JURY DEMAND

50. Ginsburg demands a trial by jury on all issues.

## VI. PRAYER

51. Ginsburg requests the following relief:

   a. Actual, compensatory, and restitution damages;

   b. The reasonable and necessary attorneys' fees and expenses incurred through the trial of this cause and through any appeal of this action, including but not limited to expert witness fees and expenses;

   c. Interest at the legal rate allowed by law prior to judgment, and after judgment interest at the legal rate allowed by law until paid;

   d. Costs of suit;

      e.      Such other and further relief, both special and general, at law or in equity, to which Ginsburg may be justly entitled.

DATED: December 9, 2013

4273676.5